## DALLAS COUNTY LEVEE IMPROVEMENT DIST. NO. 6 et al. v. RUGEL.
### (No. 10575.)

Court of Civil Appeals of Texas. Dallas.
July 12, 1929.

Rehearing Denied Sept. 28, 1929.

Craig, Sanders & Titterington, of Dallas, for appellants.

H. Bascom Thomas, Jr., of Dallas, for appellee.

VAUGHAN, J. On the 26th day of March, 1929, appellee, Rugel, instituted this suit against appellants, Dallas County Levee Improvement District No. 6, C. M. Powell, and A. G. Philbrick, to enjoin the execution by said Philbrick of a writ of possession which had been duly issued and placed in his hands, requiring him, as an officer of Dallas county, to put said Powell, who was the purchaser under a tax foreclosure sale, in possession of the property purchased by him thereat. Said writ of possession was issued upon the following established state of facts, as alleged by appellee: That appellant levee improvement district was duly organized under what is known as the Laney Act; that appellee was the owner, and had been for many years prior thereto, of the following five tracts of land within the limits of said levee improvement district, namely, part of the Thomas Riley survey in Dallas county, each tract described by separate field notes and containing respectively, 7 acres, 25 acres, 62 acres, 29 acres, and 17½ acres. Two different suits were filed in the trial court by appellant levee improvement district No. 6 against appellee Rugel, as defendant, one numbered 50537, filed on January 28, 1924, for taxes due for the years 1919, 1920, 1921, and 1922, and one numbered 60315, filed on November 27, 1925, for the taxes due for the years 1923, 1924, assessed against the above five tracts of land; that said suits were consolidated on September 19, 1926; that on June 9, 1927, the holders of the bonds issued by appellant levee district, for the payment of which said taxes had been levied, made themselves parties plaintiffs by filing their plea of intervention in said consolidated cause, they being the real parties at interest; that on the 10th day of June, 1927, judgment was rendered against appellee Rugel in said consolidated cause for the following amounts: $167.96 against said 7-acre

tract, $864.40 against said 25-acre tract, $2,143.96 against said 62-acre tract, $1,002.82 against said 29-acre tract, $721.67 against said 17½-acre tract, with foreclosure of tax lien against each tract for the amount of taxes due thereon, for order of sale to issue directing the sale of each tract for taxes, penalties, and interest charged against same. No personal judgment was rendered against appellee Rugel. Order of sale was duly issued and placed in the hands of appellant Philbrick, a constable of Dallas county, and after proper advertisement and notice given, said five tracts of land were sold to appellant Powell, the highest bidder, for $5,485.63 cash, which sum was paid by him and deed in due form made and delivered by the constable conveying said five tracts of land to said Powell. Said order of sale directed that the officer making sale of said lands should place the purchaser in possession thereof within 30 days from date of sale. After the expiration of 30 days from date of sale, the order of sale was returned, and upon request of said Powell a writ of possession was issued by the clerk of the district court, requiring said Philbrick, as constable, to place said Powell in possession of said tracts of land. On April 6, 1929, the trial court granted the injunction prayed for, restraining appellants from taking possession of or endeavoring to take possession of said five tracts of land prior to the expiration of two years from the date of deed conveying same, and ordering said constable, Philbrick, to return said writ of possession without the execution of same.

By the following propositions, appellants challenge the right of appellee to the injunctive relief granted: (a) When land has been sold to a private individual under a decree of court foreclosing a lien for levee improvement district taxes, said district being organized under the Laney Act, the former owner does not have the right to redeem said land within two years from the date of the deed; (b) when land has been sold to a private individual under such foreclosure sale, the purchaser at such sale is entitled to immediate possession, and it is the duty of the court to authorize the issuance of such writ and to direct its execution in favor of the purchaser.

Before entering upon the discussion of the above propositions, we think it advisable to here state that, when the holders of the bonds issued by appellant levee district, through their plea of intervention, became party plaintiffs to the consolidated suit, the action thereby partook of the nature and form authorized by subdivision (i), art. 8017, Rev. St. 1925, which provides: "Whenever the board of supervisors of any levee improvement district shall fail to commence suits within sixty days after taxes have become delinquent, the holder or holders of any bonds issued by such levee improvement district shall have the right to employ counsel to bring such suit in the name of the levee improve-

150

ment district upon the relation of such holder or bondholders; and such suits may be proceeded with in the same manner as hereinabove prescribed, and shall in all respects be governed by the provisions of this section." Said bondholders were therefore before the court asserting their rights as such bondholders in their proper person as the plaintiffs in actual interest in said consolidated suit.

In granting appellee the equitable relief sought, the trial court acted upon the authority of the following measure passed by the 40th Legislature, First Called Session, Acts 1927, p. 195, chapter 69, being an act to amend section 1, ch. 20, of the general laws of the Regular Session of the 40th Legislature, now article 7284a of Vernon's Complete Texas Statutes of 1928, as follows: "Whenever land is sold under a decree and judgment of Court for taxes levied by or for any district organized under the laws of the State of Texas with authority to levy and collect taxes, the owner of such property, or any one having an interest therein, shall have the right to redeem the same at any time within two years from the date of such sale upon payment of double the amount paid by the purchaser at such sale; provided, that the purchaser at such foreclosure sale, and his assigns, shall not be entitled to the possession of the property sold for taxes until the expiration of two years from the date of such sale."

Said measure became effective on June 7, 1927. Appellants contend that said article 7284a does not apply to districts organized under the Act of the 35th Legislature, Fourth. Called Session, Acts 1918, p. 97, ch. 44, known as the Laney Act, and being articles 7972 to 8042, Rev. St. 1925, inclusive, and that said article 7284a, and all similar measures, are void for the following reasons: (1) Because chapter 20 of the Regular Session and chapter 69 of the First Called Session of the Fortieth Legislature clearly define the district governed by the acts as "organized under the laws of the State of Texas with authority to levy and collect taxes," whereas levee improvement districts do not have the power to levy and collect taxes, but same are levied under the terms of the Laney Act by the commissioners' court; (2) because at the date of said chapter 20 no right existed to redeem property sold under foreclosure suits brought "for the collection of taxes for State and County purposes"; (3) because under the Constitution, as construed by the Supreme Court, in the case of City of San Antonio v. Berry, 92 Tex. 319, 48 S. W. 496, 499, the Legislature had no power to provide that the original owner in a foreclosure suit should have the right to redeem and right to possession after sale; (4) because said acts were passed and became effective long after the foreclosure suit in the instant case had been filed, which filing determined the rights and privileges which would follow therefrom. Article 8111, Rev. St. 1925, reads: "After the approval of

the engineer's report, as presented or as modified, the Court shall order an election to be held within such district at the earliest possible legal time, at which election there shall be submitted the following propositions, and none other: 'For the drainage district and the issuance of bonds and levy of tax in payment therefor;' 'Against the drainage district and the issuance of bonds and levy of tax in payment therefor.'"

Under the terms of article 8113, Id., a two-thirds majority vote is necessary to carry the propositions submitted, and only resident property taxpayers who are qualified voters of the district may vote at any election held under said act; in other words, in order for appellant district to issue bonds to carry out its plans adopted for the drainage of the lands of the district, it was necessary that an election be held to determine whether or not the proposed district should be organized, bonds issued, a tax levied to secure the payment thereof, and that a two-thirds majority of the resident property taxpayers voting at such election should vote in favor of the creation of said district, the issuance of the bonds, and the levy of the tax; therefore, it cannot be said that appellant district did not have authority to levy and collect taxes within the meaning of article 7284a, supra, because of the provisions of article 8012, Rev. St. 1925, viz.: "When bonds have been issued by any levee improvement district, providing for the levy of taxes upon a benefit basis, the commissioners' court of the county, if the district is wholly within one county, or if the district is located in more than one county, then the commissioners' court of each county in which any portion of such district is located, shall levy and cause to be assessed and collected taxes upon all taxable property within such district. * * *"

By a two-thirds majority of the resident property taxpayers of appellant levee district voting at the election for its organization, it was just as much determined that a tax to meet the bonds authorized to be issued should be levied, as it was determined that the district should be created and the bonds issued. Without this determination no levy of a tax could have been made, any more so than the district could have been created or the bonds issued, without said two-thirds majority vote. The commissioners' court, acting under said article 8012, only performed for appellant levee district the same duties that could have been performed by its board of supervisors, if so authorized, and the effect of the levy in either case would be the same, viz., a levy of taxes by appellant district. The authority to levy the tax rested with the qualified voters of the district; that is, that the levy should be made to secure funds with which to pay the bonds issued, namely, provide for a sinking fund and for the payment of interest as same should accrue. In levying the tax the commissioners' court acted as the agent

of and for the use and benefit of appellant district, and likewise, the tax collector of Dallas county, in collecting taxes, acts as its agent. As a corporation, appellant district of a necessity must act through an agent in levying, assessing, and collecting taxes. Appellant district is a part of the state government, a body politic, with authority under the Constitution to create indebtedness, to levy and collect taxes to pay same, and to subject the lands within its boundaries properly assessed to such taxes. By article 8012, supra, the commissioners' court is made "the taxing authorities of such districts," and the governing body of such district, and places upon the commissioners' court the duty, for and in the name of said district, to levy sufficient taxes to pay its debts. The secretary of the board of supervisors is the tax assessor for such district. Article 8014, Id. The tax collectors of the several counties are charged with the duty of making the collection of all taxes. Article 8015, Id. While it is true that the specific acts of making the levy and the collection of taxes for the benefit of appellant district are not authorized to be made by its officers, the fact remains that the taxes are levied and collected by the district, although through officers designated by the Legislature to act for it. Therefore, we hold that appellant levee district is authorized "to levy and collect taxes." Appellant's proposition under discussion is overruled. State, for Use of Delta County Levee Improvement Dist. No. 1, et al. v. Bank of Mineral Wells et al. (Tex. Civ. App.) 251 S. W. 1107.

Appellants further contend that, even if appellant levee improvement district is regulated by said article 7284a, the consolidated suit cannot be brought within its provisions, for the reason that the suits consolidated were begun before said act became effective. The entire nature of the original suits after consolidation was changed and modified when the bondholders became parties thereto on June 9, 1927; they became parties in their own behalf and prosecuted same in the name of appellant levee improvement district, as authorized by article 8017, supra, and as to said bondholders, they being the parties really at interest, it was as if the suit had been filed after said article 7284a became effective. Said article 7284a is a remedial statute; therefore, under what authority could it be successfully contended that said article, being unlimited in its application and general in its character, does not affect the original suits prior to or as consolidated? Remedial statutes, such as foreclosure proceedings, the character of judgments to be rendered therein, orders of sale, and writs of possession, are not, as to their detailed characteristics and the manner in which they are to be exercised, classed as property rights or inalienable rights of a citizen; but, to the contrary, they partake of the nature of remedies provided by the law to enforce property rights, and no litigant has an inherent right to a remedy whereby it cannot be changed and he be required to conform thereto. Writs of possession are new remedies given by the statutes to remove the hardship of the common-law action of a suit in ejectment to secure possession which itself was later by equity made less burdensome by the issuance of writs of assistance. The above is supported by the following authority: "It has accordingly been held that laws changing remedies for the enforcement of legal contracts, or abolishing one remedy where two or more existed, may be perfectly valid, even though the new or the remaining remedy be less convenient than that which was abolished, or less prompt and speedy. Without impairing the obligation of the contract, the remedy may certainly be modified as the wisdom of the nation shall direct. To take a strong instance: although the law at the time the contract is made permits the creditor to take the body of his debtor in execution, there can be no doubt of the right to abolish all laws for this purpose, leaving the creditor to his remedy against property alone." 1 Cooley's Constitutional Limitations (8th Ed.) p. 587.

It is within the power of the Legislature to provide that a writ of possession shall issue within two years from the date of sale, as much so as within 30 days, as there is no constitution, inhibition, or command, one way or another, and as the right to so regulate the issuance of a writ of possession would apply to individuals and their rights; then by a great degree of reason the right to so regulate the issuance of a writ of possession would apply to appellant levee improvement district, since it is a part of the government having no existence and no rights, except as given by the legislative branch thereof, all of which are subject to change, modification, or destruction by the Legislature, from whom it secures its creation and is accountable to that branch of our state government. Appellant Powell, as purchaser of the land involved, never acquired any rights therein until article 7284a became effective.

Did the Legislature have the power to pass chapter 69, supra, now article 7284a, supra? Appellants contend that such power did not rest with the Legislature and, as authority for that position, rely upon the holding in the case of City of San Antonio v. Berry, supra. In that case, Berry was sued by the city for the collection of delinquent taxes and the foreclosure of the tax lien on the property against which said taxes had been assessed. Judgment was rendered in favor of the city for the amount of taxes due with the foreclosure of lien. Order of sale was directed to be issued and the property sold thereunder, the purchaser to be placed in possession within 30 days after the date of sale. The city of San Antonio was authorized by section 183 of its special charter to institute suit or suits for delinquent taxes, foreclose liens thereon,

and to sell by order of sale as under execution the property so foreclosed on; no provision being made in said charter for the right of redemption.

On appeal, the Court of Civil Appeals reformed the judgment of the trial court so as to allow the owner of the property two years from date of sale in which to redeem the land, under authority of Acts 24th Legislature, c. 42, approved April 13, 1895, being a general statute providing for the collection of taxes theretofore levied and thereafter levied, making such taxes a lien on the lands taxed, establishing and continuing such lien, providing for the sale and conveyance of land delinquent for taxes since January 1, 1885. Sections 8, 11, and 14 of said act are as follows:

"Sec. 8. In all cases in which lands have been sold or may be sold for default in the payment of taxes it shall be lawful for the sheriff selling the same, or any of his successors in office, to make a deed or deeds to the purchaser or to any other person to whom the purchaser may direct the deed to be made, and any such deed shall be held in any court of law or equity in this State to vest a good and perfect title in the purchaser thereof, subject to be impeached only for actual fraud."

"Sec. 11. Any incorporated city or town or school district shall have the right to enforce the collection of delinquent taxes due it under the provisions of this act."

"Sec. 14. Where lands are sold under the provisions of this act the owner or any one having an interest therein shall have the right to redeem said land, or his interest therein, within two years from the date of said sale upon the payment of double the amount paid for the land."

It was not held in the Berry Case that the Legislature did not have the authority to pass said act, chapter 42, Acts 24th Legislature, supra, but that "section 11 was not intended to take away the express authority given to any city by special charter to bring an ordinary suit to recover its taxes. Its purpose was merely to authorize cities, towns, and school districts to accept the benefits of that act, should they see proper to proceed in the manner pointed out therein"; that "the charter permitted a suit to recover the taxes, and since no restrictions are prescribed in reference to the proceedings, it must be held that it was meant that it could proceed as under the general laws for the enforcement of liens, and that it could subject the property upon which the lien existed to an absolute sale for the payment of the taxes due upon it." This was only recognizing the right of the city to proceed under the special charter power conferred upon it for the collection of delinquent taxes, or the right to proceed under said act of the 24th Legislature, supra, and that without forfeiting its right to make a sale as effectual by proceeding under that act as if it had proceeded alone under its special charter

power. As to the construction placed by said opinion upon section 13, art. 8, of our Constitution, viz.: "Provision shall be made by the first Legislature for the speedy sale of a sufficient portion of all lands and other property for the taxes due thereon, and every year thereafter for the sale of [a] all lands and other property, upon which the taxes have not been paid, and the deed of conveyance to the purchaser for all lands and other property thus sold shall be held to vest a good and perfect title in the purchaser thereof, subject to be impeached only for actual fraud; provided that the former owner shall, within two years from date of purchaser's deed, have the right to redeem the land upon the payment of double the amount of money paid for the land," we have only been able to gather from its language the following construction: That the right of redemption secured by said provision applies only to "the speedy sale for which the Legislature was required to make provision," independent of and without reference to any court proceedings, and that said constitutional provision did not apply to sales made under and by virtue of a judgment of a court foreclosing lien and ordering sale of the property. In other words, that the right "to redeem" was only applicable to lands sold under a "summary remedy"; therefore, said constitutional provision did not apply to lands sold under judicial foreclosure, as the "summary remedy" required to be enacted did not have reference to, but was independent of, court proceedings. We have not been able to gather from the opinion a single expression indicating that it was in the remotest degree the intention of the court to hold that, "by the adoption of said constitutional provision," supra, there was withdrawn by the sovereign power of the state from the Legislature the right to enact any other measure for the collection of taxes than the "summary remedy" held in the Berry Case, that the Legislature by said provision was alone directed by its terms to enact; but, to the contrary, we can only gather from the language of said opinion that said constitutional provision was adopted for only one purpose, namely, to require the Legislature to enact a "summary remedy," or plan of procedure, for the speedy sale of a sufficient portion of all lands and other property for the payment of taxes due thereon, and that the following language of said article, "that the former owner shall, within two years from date of purchaser's deed, have the right to redeem the land upon the payment of double the amount of money paid for the land," only applies to and embraces land sold under such "summary remedy," and not to lands sold under judicial proceedings, as that was not the remedy the Legislature was required to provide for the speedy sale of lands for taxes due thereon.

■■ The Constitution of this state is not a grant of powers to the Legislature, for, as

representatives of the people to enact laws, the members of the Legislature possess all power inherently possessed by the people of the state to enact laws for their observance and enforcement, subject only to such limitations as may be found expressly stated or by implication necessarily drawn from the language of our state Constitution, or within and from our federal Constitution, or such measures as would be prohibited on the ground of being contrary to the public good. We have not been able to gather from the language of said constitutional provision, section 13, art. 8, a limitation upon the prerogative of the Legislature that denied it the power to pass the act now article 7284a, supra, but only a command that the Legislature should pass an act providing for the "speedy sale of a sufficient portion of all lands and other property for the taxes due thereon," which provision left the Legislature in full possession of its prerogative to enact a complete judicial system of procedure for the enforcement of the collection of past due taxes, the regulation of the rights of the purchaser and the owner of the property sold, in that, while the purchaser would require a good and perfect title subject to the rights of the owner to redeem at any time within a certain period of time; that after the expiration of said period of redemption, the land not having been redeemed, writ of possession to issue placing the purchaser in possession of the land purchased by him; this because such a course of procedure for the collection of delinquent taxes is not included within the terms and provisions of said constitutional provision, supra, and is not in conflict with its terms, or would interfere with the enforcement of the "summary remedy" that the first Legislature, convening after the adoption of said constitutional provision, was required by its terms to enact.

It is well to here recall the difference in the rule applicable to the construction of a state Constitution and the rule applicable to the construction of our federal Constitution, as follows: "The government of the United States is one of enumerated powers; the national Constitution being the instrument which specifies them, and in which authority should be found for the exercise of any power which the national government assumes to possess. In this respect it differs from the Constitution of the several States, which are not grants of powers to the States, but which apportion and impose restrictions upon the powers which the States inherently possess." 1 Cooley's Constitutional Limitations (8th Ed.) p. 11. "The government, then, of the United States, can claim no powers which are not granted to it by the Constitution, and the powers actually granted, must be such as are expressly given, or given by necessary implication." Per Story, J., in Martin v. Hunter's Lessee, 1 Wheat. 304, 326, 4 L. Ed. 97,

103; Gibbons v. Ogden, 9 Wheat. 1, 187, 6 L. Ed. 23, 68.

The Tenth Amendment to our federal Constitution provides: "The powers not delegated to the United States by the Constitution, nor prohibited by it to the States, are reserved to the States respectively, or to the people."

The rights of the people are not originated by the provisions of a state Constitution, but are perpetuated and protected thereby. They are a limitation upon the powers of those intrusted with governmental authority, but are not a limitation upon the rights of the people, or their legislative representatives, unless by the language of the instrument itself, or by necessary implication therefrom. "Written constitutions sanctify and confirm great principles, but the latter are prior in existence to the former." 2 Webster's Works, 392; see also 2 Story, Life and Letters, 279. As extremely appropriate to the determination of this particular question, we further quote from 1 Cooley's Constitutional Limitations, pp. 175 to 177, inclusive, as follows: "There are two fundamental rules by which we may measure the extent of the legislative authority in the states:—1. In creating a legislative department and conferring upon it the legislative power, the people must be understood to have conferred the full and complete power as it rests in, and may be exercised by, the sovereign power of any country, subject only to such restrictions as they may have seen fit to impose, and to the limitations which are contained in the Constitution of the United States. The legislative department is not made a special agency for the exercise of specifically defined legislative powers, but is entrusted with the general authority to make laws at discretion. * * * 'The people in framing the Constitution,' says Denio, C. J., 'committed to the Legislature the whole law-making power of the state, which they did not expressly or impliedly withhold.'" See State v. Whisman, 36 S. D. 260, 154 N. W. 707, L. R. A. 1917B, 1.

Plenary power in the Legislature, for all purposes of civil government, is the rule. A prohibition to exercise a particular power is an exception. In inquiring, therefore, whether a given statute is constitutional, it is for those who question its validity to show that it is forbidden. I do not mean that the power must be expressly inhibited, for there are but few positive restraints upon the legislative power contained in the instrument. The first article lays down the ancient limitations which have always been considered essential in a constitutional government, whether monarchial or popular; and there are scattered through the instrument a few other provisions in restraint of legislative authority. But the affirmative prescriptions and the general arrangements of the Constitution are far more fruitful of restraints upon the Legis-

154

lature. Every positive direction contains an implication against anything contrary to it, or which would frustrate or disappoint the purpose of that provision. The frame of the government, the grant of legislative power itself, the organization of the executive authority, the erection of the principal courts of justice, create implied limitations upon the lawmaking authority as strong as though a negative was expressed in each instance; but independently of these restraints, express or implied, every subject within the scope of civil government is liable to be dealt with by the Legislature. "It has never been questioned, so far as I know," says Redfield, C. J., "that the American Legislatures have the same unlimited power in regard to legislation which resides in the British Parliament, except where they are restrained by written constitutions. That must be conceded, I think, to be a fundamental principle in the political organizations of the American states. We cannot well comprehend how, upon principle, it should be otherwise. The people must, of course, possess all legislative power originally. They have committed this in the most general and unlimited manner to the several state Legislatures, saving only such restrictions as are imposed by the Constitution of the United States, or of the particular state in question."

The provisions of a state Constitution do not confer any powers upon the Legislature, but are mere limitations. The Legislature has plenary power in all matters of legislation, except as limited by the Constitution. Idaho Power, etc., Co. v. Blomquist, 26 Idaho, 222, 141 P. 1083, Ann. Cas. 1916E, 282; Schmitt v. Cooke, etc., Co., 187 Ind. 623, 120 N. E. 19, 3 A. L. R. 270; State v. Mankato, 117 Minn. 458, 136 N. W. 264, 41 L. R. A. (N. S.) 111.

The only restraints upon the exercise of the legislative prerogative are those expressly or impliedly contained in the federal and state Constitutions, and those immutable principles which lie at the very foundation of society. Hudspeth v. Swayze, 85 N. J. Law, 592, 89 A. 780, Ann. Cas. 1916A, 102; Solon v. The State, 54 Tex. Cr. R. 261–275, 114 S. W. 349.

In the case of Lytle v. Halff & Bro., 75 Tex. 128, 12 S. W. 610, it is held: "An act of the State Legislature will be held valid unless its passage is expressly or by necessary implication forbidden by some superior law." And that: "A prohibition against the exercise of legislative power cannot result from necessary implication unless, looking to the language and purpose of the Constitution, it is evident that without such implication the will of the people, as manifest by an inspection of all the provisions of the Constitution, cannot be given effect." Also Harris County v. Stewart, 91 Tex. 143, 41 S. W. 650, 655, in

which it is held: "Courts have no right to declare an act of the legislature void because it is against the spirit of the constitution. When a judge pronounces a law to be contrary to the constitution, he must be able to put his finger upon the provision of that instrument which prohibits the act, or from which the prohibition necessarily arises."

We have not been able to find in the Constitution language that in any respect prohibits the act now article 7284a, supra, or any provision in our Constitution from which such prohibition can be even loosely implied. Brown v. City of Galveston, 97 Tex. 15, 75 S. W. 488.

We therefore hold that said legislative enactment referred to herein as article 7284a was within the powers of the Legislature to pass, and is therefore a valid statutory provision and applicable to the rights of the owner of the land sold and the purchaser thereof, in that the owner has the right to redeem same within two years from date of sale, and during that time the right to the possession of the five tracts of land involved, and that if, within two years from date of the deed of conveyance, the owner (appellee) shall not have redeemed, the purchaser will be entitled to his writ of possession after the expiration of two years from the date of his deed. Therefore the judgment of the court below is in all things affirmed.

Affirmed.