## LIFE INS. CO. OF VIRGINIA v. SANDERS et al.

### No. 2888.

Court of Civil Appeals of Texas. El Paso.

June 1, 1933.

Rehearing Denied July 19, 1933.

George T. Burgess, of Dallas, for relator.

Austin F. Anderson and Slay & Simon, all of Fort Worth, for respondents.

PELPHREY, Chief Justice.

On December 13, 1927, R. C. Sanders and wife executed a promissory note and a deed

of trust upon certain property located in Ryan Place addition to the city of Fort Worth, Tex. On February 27, 1932, relator recovered a judgment in the district court of Dallas county for the debt evidenced by the note and deed of trust and foreclosure of the lien upon the property.

That judgment was affirmed by this court February 2, 1933 [57 S.W.(2d) 327], and no writ of error was applied for.

On April 7, 1933, relator had an order of sale issued and placed same in the hands of the sheriff of Tarrant county for execution. The sheriff advertised the property for sale upon the May sale day, to wit, May 2, 1933.

On that day Sanders and wife filed their petition in the Seventeenth district court of Tarrant county seeking to enjoin the sheriff from selling the property for a period of 180 days from that date. Upon the same day that court entered the following order: "In chambers this 2nd day of May, A. D. 1933, the foregoing petition for injunction being considered, it is ordered that the Clerk of the District Court of Tarrant County, Texas, issue a writ of injunction in all things as prayed for in said petition, returnable to the 101st District Court of Dallas County."

The writ was then issued and served upon the sheriff on that date.

May 12, 1933, relator filed in this court an application for writs of prohibition, injunction, and mandamus.

This court, on May 15th, issued notice to respondents to appear on May 25th and show cause why the writs, as prayed for, should not issue.

On that day respondents filed an answer questioning the jurisdiction of this court to consider the application, demurred generally and specially to the petition, and further answered by general and special denial.

■ The first question arising is that of the power of this court to issue the writs prayed for under facts such as we have before us. This court has power to issue writs of mandamus and all other writs necessary to enforce its jurisdiction, article 1823, Revised Statutes, and has that power only for such purpose.

It follows, therefore, that we have no power to issue the writs here prayed for unless the act here complained of is an interference with our jurisdiction.

■ Was the court's action in enjoining the sheriff from selling the property under the judgment affirmed an interference with the jurisdiction of this court?

Our Supreme Court in the case of Wells v. Littlefield, 62 Tex. 28, had the following to say relative to its power to issue writs for the purpose of enforcing its jurisdiction: "So soon as the jurisdiction attaches under an ap-

peal or writ of error, this court has full control of the cause, and can make such orders concerning it as may be necessary to preserve the rights of the parties and enforce its mandates. This jurisdiction continues until the case, as made by the appeal or writ of error, is fully determined by this court and its judgment is completely executed by the court below. If the judgment below is affirmed, or reversed and rendered or reformed, this court can see that the party in whose favor its decision has been given has the benefit of all proceedings below necessary to enforce its judgment."

The same court in Milam County Oil & Mill Co. v. Bass, 106 Tex. 260, 163 S. W. 577, 578, used this language: "A valid judgment should be effective to secure the benefits that it decrees; and its active office therefore continues for the full accomplishment of that result. Any interference with its enforcement or the due exercise of rights which it establishes would amount to a violation of the jurisdiction of the court as a hindrance to its power to put the judgment into effect and preserve its operative force."

The power of this court is identical with the power of the Supreme Court in the matter of issuing writs to enforce its jurisdiction.

It follows, therefore, that the enjoining of the sale was an interference with the complete execution of our judgment by the court below, and the question should be answered in the affirmative. See, also, the following cases as to the power of this Court to issue writs to prevent interference with its jurisdiction: Millikin v. Jeffrey, 117 Tex. 134, 299 S. W. 393; Halbrook et al. v. Quinn et al. (Tex. Civ. App.) 286 S. W. 954; Cattlemen's Trust Co. v. Willis et al. (Tex. Civ. App.) 179 S. W. 1115; Long v. Martin (Tex. Civ. App.) 260 S. W. 327 (dismissed for want of jurisdiction, 114 Tex. 581, 278 S. W. 1115); Williams v. Foster (Tex. Civ. App.) 233 S. W. 120; Hovey v. Shepherd, 105 Tex. 237, 147 S. W. 224; Birchfield v. Bourland (Tex. Civ. App.) 187 S. W. 422, 425; Farrell v. Young et al. (Tex. Civ. App.) 23 S. W.(2d) 468; Bell v. Young (Tex. Civ. App.) 20 S.W.(2d) 135.

■ The contentions of respondents that we have no jurisdiction to issue the writs prayed for because relator has an adequate remedy at law and because writs of prohibition cannot be used as a means of testing the validity of a statute are, in our opinion, untenable. In Wells v. Littlefield, supra, the first contention was made and overruled by the Supreme Court, in the following language: "If the ground taken by respondent's counsel, that we cannot issue the writ because the relator has his remedy by appeal, is to prevail, then this court will be without power to enforce its judgments in any cause." See, also, Bell v. Young, supra.

We have no quarrel with the general principle embodied in the second contention, but in a case such as this, where the act which interferes with our jurisdiction is done in pursuance of a statute passed after our judgment was rendered, and the party in whose favor our judgment was rendered complains of such action to us, contending that the interference was based upon an invalid law, it presents a case where we are obliged to decide the validity of such statute. In other words, if the statute under which the Tarrant county district court enjoined the sale of the property here involved is a valid one, then we can grant no relief to relator, while if, on the other hand, the act is invalid, then there has been an unlawful interference with our jurisdiction, and relator should have the writs issued. It appears from the record before us the Tarrant county district court enjoined the sale solely by reasons of the provisions of House Bill No. 231, passed by the present session of the Legislature, and which became effective May 1, 1933 (chapter 102 [Vernon's Ann. Civ. St. art. 2218b]).

We think it clear from the act itself that court did not have the power to grant the injunction, the act expressly limiting the granting of the relief provided for therein to the court or judge having jurisdiction of the subject-matter.

It appears, however, that the injunction was made returnable to the 101st district court of Dallas county, the court where the original judgment was rendered, and that the petition of Sanders and wife is now on file in that court.

In this condition of the record, the 101st district court, by virtue of the provisions of the Stay Act, has the power to issue further orders staying the carrying out of the judgment. We therefore must pass upon the validity of the act involved.

It (section 1) provides that: "In all suits or causes of action which are pending in any trial court exercising jurisdiction in this State on the effective date of this Act, and in all suits or causes of actions which may be filed within one hundred and eighty (180) days from and after the effective date of this Act and in which a judgment for the recovery of real property sought to be recovered or wherein a recovery of real property is sought for a failure or omission to pay any indebtedness due thereon, or to foreclose any lien or liens thereon, the defendant shall have the right to a postponement or continuance thereof as herein provided and a stay of orders of sales or executions by complying with the conditions as hereinafter set forth, to-wit."

The conditions prescribed are that he shall file a sworn statement showing (1) that he is unable to pay the indebtedness, and that, if sold, the property would probably sell for less than either its reasonable market value or its intrinsic value; (2) that the lien sought to be foreclosed was not procured to secure indebtedness for money or property procured by misrepresentation, fraud, defalcation, or embezzlement; (3) that the rendition of a judgment as prayed for would result in an unfair, unjust, and inequitable financial injury to him; (4) that the property is not being wasted, ill treated, mismanaged, or destroyed, and is in substantially as good condition as when the lien was executed; (5) that he has not dissipated the property or the rents and revenues therefrom; (6) that he is not in arrears in payment of taxes for more than four (4) years since February 1, 1922, on the property involved in the suit; and (7) that he consents to the appointment of a receiver to collect all rents and revenues from the property, and that they shall either be applied to discharge the indebtedness or deposited in the registry of the court to await the final disposition of the case as the judge may direct.

The act further provides for a hearing upon the motion by the judge or court before whom the suit or cause of action is pending, and authorizes extensions from time to time, but in no event beyond May 1, 1934.

It further directs the court, in passing upon the question of postponement, to consider the financial condition of the parties, the nature and character of the property, the disposition likely to be made of the property if taken by the plaintiff or retained by the defendant and the general economic conditions existing at the time of the hearing.

Section 3 authorizes the granting of temporary injunctions to prevent sales under execution, orders of sale, or under deeds of trust.

Section 9 exempts from its provisions contracts entered into after the effective date thereof, even though they be in renewal or extension of contracts executed or assumed prior to such date. Section 11 suspends all laws in conflict for 180 days.

The emergency clause reads: "The fact that an extraordinary financial emergency and depression exists within this State and elsewhere, and that many citizens are threatened with destructive suits for the recovery of money and to the foreclosure of liens upon property and that it is difficult to secure supersedeas bonds, and by reason thereof imminent danger exists whereby citizens may be subjected to distressing losses, and because thereof such suits or proceeding as provided in this Act should be permitted to be stayed or continued, for the period and under the circumstances as herein provided, and the fact that great and irreparable wrong and injury will be done unless immediate relief as aforesaid hereby be granted, creates an emergency and an imperative public necessity that the Constitutional Rule requiring bills to be read on three several days be suspended and the same is hereby suspended,

and this Act shall take effect from and after its passage, and it is so enacted."

Relator contends that the act is unconstitutional, both as a taking of property without compensation and in violation of contractual and vested rights, and that therefore all the acts of parties complained of are unwarranted.

In its argument relator, after referring to the statutes in force at the time of the execution of the contract and at the time the judgment in its favor was affirmed by this court, asserts that the effect of the act is to abrogate its right, after final judgment, to sue out its order of sale; have the sheriff execute same at once by levying on the property, expose same for sale at the first sale day thereafter, sell the same to'the highest bidder, execute a deed therefor, and within thirty days thereafter place the purchaser in possession; that the act denies to relator the right to have said property sold and receive its money if the property should sell for more than the debt, or be placed in possession thereof if it should be the purchaser; and that it vests in respondents, Sanders and wife, an additional and larger estate in the property and deprives it (relator) of its title and estate therein.

Relator thus presents the question of whether the act complained of impairs the obligation of its contract and is therefore invalid under the provisions of the Constitution of this state and of the United States (Const. U. S. art. 1, § 10, cl. 1; Const. Tex. art. 1, § 16). It is clear that the act does not operate upon any right provided for in the contract itself, but merely alters the remedy which existed at the time the contract was executed and the judgment became final.

 The question as to how far legislation may go in changing the remedy without being in conflict with both the state and Federal Constitutions has been the subject of numerous decisions of both our state and federal courts. There is a class of decisions that holds that the obligation of a contract, legally regarded, consists in the remedy which the law gives to enforce it; and, as a consequence, the efficiency of the remedy cannot be changed without thereby impairing the obligation. Another class broadly distinguishes between obligation and remedy, and maintains that the remedy may be changed or even wholly taken away by the Legislature without contravening the Constitution. But the prevailing view is a middle one between these extremes, and asserts the doctrine that the remedy may be changed in the regular and ordinary course of legislation, provided it be not destroyed, or the rights which existed in favor of the creditor, at the time the contract was made, are not substantially interfered with seriously embarrassed, or defeated. Jones v. McMahan, 30 Tex. 719.

Chief Justice Stayton, in International Building & Loan Association v. Hardy, 86 Tex. 610, 26 S. W. 497, 498, 24 L. R. A. 284, 40 Am. St. Rep. 870, in discussing the validity of an act requiring sales of real estate under powers conferred by deeds of trust or other contract liens to be made in a certain manner, said: "The leading purpose of that contract (referring to a deed of trust in which the power of sale was given to the trustee and the mode of making the sale provided) was to give lien on the property described in it, to secure debt due or to become due from one party to the other; and if the contract had gone no farther than to secure this right, there is no doubt that it would have been within the power of the Legislature to change the remedy then existing for the enforcement of such a right through the Courts, in any respect that did not essentially affect the right secured."

Again, in Standifer v. Wilson, 93 Tex. 232, 54 S. W. 898, 901, we find the following announcement of the rule followed in this state: "In the proposition often stated in the decisions, that parties contract with reference to existing laws and that such laws become a part of the contract, the reference is to those laws which determine and fix the obligation of the contract, the correlative rights and duties springing from it, and not to laws of mere procedure prescribing remedies. With reference to these, there is ordinarily no obligation arising, but the contract is made in contemplation of the power of the Legislature to change them. Of course, all remedy cannot be taken away, nor can the existing remedy be so altered as to take away or impair any of the rights as given by the contract as interpreted by existing law."

In the recent case of Ætna Casualty & Surety Co. v. Woodward, 41 S.W.(2d) 674, 676, the Commission of Appeal in passing on a case in which the law, at the time the contract was made, contained no requirement as to notice by a materialman to the contractor, but a subsequent law required the giving of notice within 30 days after material was delivered, expressed this doctrine: "And it must be presumed that the parties entered into the contractual relation in contemplation of remedies afforded by the State and it must be further presumed that the power of the Legislature to substitute other remedies was contemplated. Subsequent legislation which affects the change in this respect is not rendered invalid as to said parties by the constitutional provision (U. S. Const. art. 1, § 10, cl. 1; Const. Texas, art. 1, § 16) against the impairment of the obligation of contract if an adequate remedy is left available."

This holding was by section B of the Commission of Appeals.

Section A of the Commission of Appeals

used the same language in Patton v. New Amsterdam Casualty Co., 36 S.W.(2d) 1000.

In Dallas County Levee Improvement Dist. v. Rugel (Tex. Com. App.) 36 S.W.(2d) 188, 189, Commission B, in passing upon a statute which prevented a purchaser under a tax sale from taking possession of the property purchased for a period of two years, quoted from Ruling Case Law, vol. 6, § 321, as follows: "While it is undoubted that the Legislature may make changes in the remedy, it is necessary that the contract should be left with the same force and effect, including the substantial means of, enforcement which existed when it was made," and, after citing certain federal and state decisions, reversed the judgment of the trial court enjoining the issuance of a writ of possession and rendered judgment in favor of plaintiffs in error. In doing so they said: "The remedy was annexed to the contract at the time it was made; hence any law impairing this substantial right impaired the obligation which the contract imposed."

The provision in our Constitution as to the impairment of the obligation of contracts being identical with that in the Constitution of the United States, and the contention being made that the act here involved is in contravention of that provision, we should look also to the decisions of our federal courts.

Among the first cases decided by the Supreme Court of the United States is Green et al. v. Biddle, 8 Wheat. 17, 5 L. Ed. 547, in which is found the following expression: "It is no answer that the acts of Kentucky now in question are regulations of the remedy, and not of the rights to the lands. If these Acts so change the nature and extent of existing remedies as materially to impair the rights and interests of the owner, they are just as much a violation of the compact as if they directly overturned his rights and interest."

After a second argument, the court used this language: "Nothing in short, can be more clear, upon principles of law and reason, than that a law which denies to the owner of land a remedy to recover the possession of it, when withheld by any person, however innocently he may have obtained it; or to recover the profits received from it by the occupant; or which clogs his recovery of such possession and profits, by conditions and restrictions tending to diminish the value and amount of the thing recovered, impairs his right to, and interest in, the property. If there be no remedy to recover the possession, the law necessarily presumes a want of right to it. If the remedy afforded be qualified and restrained by conditions of any kind, the right of the owner may indeed subsist and be acknowledged; but it is impaired, and rendered insecure, according to the nature and extent of such restrictions."

In the later case of Bronson v. Kinzie, 1 How. 311, 317, 11 L. Ed. 143, the court quoted the first expression with approval, and had the following further to say: "It is difficult, perhaps, to draw a line that would be applicable in .all cases between legitimate alterations of the remedy and provisions which, in the form of remedy, impair the right. But it is manifest that the obligation of the contract, and the rights of a party under it, may, in effect, be destroyed by denying a remedy altogether; or may be seriously impaired by burdening the proceedings with new conditions and restrictions, so as to make the remedy hardly worth pursuing. And no one, we presume would say that there is any substantial difference between a retrospective law declaring a particular contract or class of contracts to be abrogated and void, and one which took away all remedy to enforce them, or encumbered it with conditions that rendered it useless or impracticable to pursue it."

The court again in McCracken v. Hayward, 2 How. 608, 11 L. Ed. 397, said: "The obligation of a contract consists in its binding force on the party who makes it. This depends upon the law in existence when it is made; these are necessarily referred to in all contracts, and forming a part of them as the measure of the obligation to perform them by the one party, and the right acquired by the other. There can be no other standard by which to ascertain the extent of either, than that which the terms of the contract indicate, according to their settled legal meaning; when it becomes consummated, the law defines the duty and right, compels one party to perform the thing contracted for, and gives the other a right to enforce the performance by the remedies then in force. If any subsequent law affect to diminish the duty, or to impair the right, it necessarily bears on the obligation of the contract, in favor of one party, to the injury of the other; hence any law, which in its operation amounts to a denial or obstruction of the rights accruing by a ,contract, though professing to act only on the remedy, is directly obnoxious to the prohibition of the Constitution."

In Edwards v. Kearzey, 96 U. S. 595, 24 L. Ed. 793, we find the court again saying: "The remedy subsisting in a state when and where a contract is made and is to be performed is a part of its obligation, and any subsequent law of the state which so affects that remedy as substantially to impair and lessen the value of the contract is forbidden by the constitution, and is, therefore, void."

In Barnitz v. Beverly, 163 U. S. 121, 16 S. Ct. 1042, 1045, 41 L. Ed. 93, the court, after quoting from several decisions, some of them being the above, said: "At all events, the decisions of this court are numerous that the laws which prescribe the mode of enforcing a contract, which are in existence when

it is made, are so far a part of the contract that no changes in these laws which seriously interfere with that enforcement are valid, because they impair its obligation within the meaning of the Constitution of the United States."

Whether we adopt the doctrine laid down in the above decisions, that the laws providing a remedy for the enforcement of a contract are a part thereof, or that announced in some of the Texas decisions, that such laws are not a part of the contract, but are merely in the contemplation of the parties, and that they are presumed to contemplate that the Legislature has the power to change them, it appears to be well settled that any change in the laws relative to the remedy which essentially affects the rights secured by the contract, or which diminishes the value of the contract, violates the constitutional provision as to the impairment of the obligation of contracts. Applying this principle to the act in question, what of its validity?

Under the law as it existed when the contract here was executed, relator was entitled, when its judgment became final against Sanders and wife, to have an order of sale issued; to have the sheriff, without delay, levy upon the property upon which the lien was foreclosed, expose the same for sale (after giving the notice provided in article 3808) at the first sale day thereafter, and place the purchaser in possession within thirty days after the day of sale.

This was a valuable right, and a right, no doubt, that was taken into consideration by the relator when the contract was made. House Bill No. 231 compels it to wait approximately seven months before it can have the sale made. In other words, this act takes away from relator all remedy for that period.

■■ The question whether a law is void for its repugnancy to the Constitution is at all times a question of much delicacy, which ought seldom, if ever, to be decided in the affirmative in a doubtful case. The court, when impelled by duty to render such a judgment, would be unworthy of its station, could it be unmindful of the solemn obligations which that station imposes. With this thought in mind, and being not unmindful of the very humane purpose for which this statute was enacted, yet it seems to us to be beyond controversy that this provision of the law impairs the obligations of such contracts and is void.

One of the first cases in which the validity of "stay laws" came before the courts of this state was in what are referred to in the reports as the "Sequestration Cases." The opinion in the cases was written in Luter v. Hunter, 30 Tex. 689, 98 Am. Dec. 494.

In 1863 the Legislature passed an act (Acts 10th Leg. c. 7) suspending all laws for the collection of debts and liabilities on bonds, promissory notes, bills of exchange, and contracts for the payment of money, until twelve months after the ratification of a treaty of peace between the Confederate States and the United States.

In a suit by Hunter for the collection of $100.00 and interest due on a note, Luter pleaded this act. In holding the act invalid, the court said: "None will seriously question the right of each of the states to change, alter, or amend the laws providing the mode and manner of dispensing justice in their respective judicial tribunals as they may deem best calculated to promote the ends of justice, and conduce to the public interests and convenience. But, if under the power to regulate, it be assumed that the remedy can be changed, not for the purpose of making the administration of justice more certain, complete, and efficacious, but for the purpose of denying or withholding indefinitely, or for a considerable time such remedies as existed for the enforcement of pre-existing contracts, with the sole purpose of relieving obligors, then we are constrained to dissent."

Again, in 1866, the Legislature passed an act (Acts 11th Leg. c. 125) providing that on all judgments rendered prior to January 1, 1867, the judgment debtor should be allowed to pay off the judgment in four equal annual installments, the first installment to be payable within twelve months from the date of the judgment, and that execution should not issue until the debtor had defaulted in the payment of one of the installments.

The Supreme Court, in Jones v. McMahan, 30 Tex. 719, held the act invalid as impairing the obligation of contracts.

Another case which appears to be in point as far as the principle involved is concerned arose under the following facts as shown by the opinion of the Commission of Appeals in Dallas County Levee Imp. Dist. No. 6, et al. v. Rugel, supra:

"Defendant in error, F. C. Rugel, who owned certain lands, situated in the Dallas County Levee Improvement District No. 6, became delinquent in the payment of certain taxes levied by said district to secure the payment of outstanding bonds which were issued in 1918. Suit was brought by the District, in which the bondholders intervened as plaintiffs, and upon trial judgment was rendered against Rugel for the amount of the taxes, interest and penalties, with a foreclosure of the tax lien, and the premises were ordered sold. At the sale, plaintiff in error Powell became the purchaser.

"Writ of possession was duly issued, but, before the officer could execute the same, defendant in error, Rugel, applied for and obtained a temporary injunction, which was made permanent on final hearing, restraining the officer from executing the writ of posses-

sion and the purchaser, Powell, from taking possession of said lands prior to the expiration of two years from the date of his deed, and providing that at the end of two years writ of possession should be issued and Powell placed in possession of so much of said land as had not been redeemed by defendant in error, Rugel."

This judgment was affirmed by the Court of Civil Appeals. 20 S.W.(2d) 148.

Rugel sought to sustain the judgment by applying the provisions of an act of the Fortieth Legislature, 1927 (1st Called Sess. c. 69 [Vernon's Ann. Civ. St. art. 7284a]), which authorized the owner of land against which a foreclosure had been had for taxes due a levee district to redeem the same within two years from the date of sale upon payment of double the amount paid by the purchaser at foreclosure sale, and further provided that the purchaser at such sale should not be entitled to the possession of the property until the expiration of two years. In answer to the contention that the act merely changed the remedy, the court said: "That the burden imposed by the Act in question diminishes the value of the security given to the bondholders under their contract with the levee district is too plain to admit of any serious controversy. By the terms of the act the owner of land is given the valuable privilege of retaining possession of same for a period of two years after it has been sold under judgment of foreclosure, without being subject to the payment of any rent or liability for waste, while the purchaser is liable during this time for taxes accruing thereon. * * * It would be paradoxical indeed to say that a valuable estate or right of possession may thus be carved out of land pledged to secure the payment of a debt, without material impairment of the rights of a creditor who, at the time of the execution of the contract creating the indebtedness held by him, enjoyed the privilege of a security which might be sold free from the burden of any such estate or right of possession."

We think the holdings in these cases amply support our above holding, and that what was there said by the courts applies to the particular facts here involved.

It may be argued, however, that the act here complained of comes within the police power of the state. In our Constitution, the liberties protected by the Bill of Rights (the provision against impairment of contracts being included therein) are by express provision "excepted out of the general powers of government," and the police power is subject to the limitations imposed by the Constitution upon every power of government. Spann v. City of Dallas, 111 Tex. 350, 235 S. W. 513, 19 A. L. R. 1387.

"To justify the State in thus interposing its authority in behalf of the public it must appear, first, that the interest of the public generally, as distinguished from those of a particular class, require such interference; and, second, that the means are reasonably necessary for the accomplishment of the purpose, and not unduly oppressive upon individuals. The Legislature may not, under the guise of protecting the public interests, arbitrarily interfere with private business or impose unusual and unnecessary restrictions upon lawful occupations." Lawton v. Steele, 152 U. S. 133–137, 14 S. Ct. 499, 501, 38 L. Ed. 385–388.

This expression was quoted with approval in St. Louis S. W. Railway Co. v. Griffin, 106 Tex. 477, 171 S. W. 703, L. R. A. 1917B, 1108. Even a cursory reading of House Bill No. 231 will reveal that it was enacted for the sole purpose of relieving debtors, and therefore fails to measure up to the standard as fixed above.

Having reached the conclusion that the act is invalid, as far as it applies to contracts executed before its effective date, it is ordered that the writs of prohibition, mandamus, and injunction be awarded and issued in all things as prayed for in relator's petition.