**SCHALCH et al. v. GRAHAM et al.**
No. 11697.

Court of Civil Appeals of Texas. Dallas.
Dec. 23, 1933.

Lyle Saxon, of Dallas, for relators.

Jack Keller and Thomas T. Lewis, both of Dallas, for respondents.

LOONEY, Justice.

The facts leading to the present controversy are these: On May 5, 1932, relators, Mrs.

Eula Schalch and husband, George W. Schalch, purchased from E. Allen Graham a parcel of land, being lot 27, block 24, in Hollywood addition to the city of Dallas, in consideration of $9,500, of which $3,500 was cash; $3,750 was evidenced by an installment note constituting a first lien (not involved here), and $2,250 evidenced by two notes payable in installments to the order of W. Wilson Graham, one for $750, the other for $1,500, being a second lien and secured by trust deed, containing power of sale in E. Allen Graham, trustee. Relators having defaulted in the payment of certain of the installments, the holder exercised his option to accelerate maturities and, on his request, the trustee posted notices for sale of the property under the trust deed, to take place on October 3, 1933. On October 2, 1933, at the suit of relators, based upon the provisions of chapter 102, enacted at Regular Session of the 43d Legislature (1933), known as the Moratorium Act (Vernon's Ann. Civ. St. art. 2218b), Hon. W. M. Taylor, judge of the Fourteenth judicial district court of Dallas county, granted a temporary writ, restraining E. Allen Graham, individually and as trustee, and W. Wilson Graham, from selling the property under the trust deed. Hearing on the matter was had on October 14, 1933, at which the court, being of the opinion that the Moratorium Act was unconstitutional, dissolved the temporary writ, but suspended the order of dissolution pending appeal by relators, which was perfected and is now properly pending in this court.

On November 20, 1932, Frank D. Graham, owner of the two second lien notes, filed a separate suit in the same court against relators, wherein he sought judgment for his debt, and foreclosure of the lien upon the property, also procured the issuance of a writ of sequestration, placed same in the hands of Louis Brown, constable, who was threatening to take possession of the premises and eject relators therefrom. In this status, on application of the relators, we entered an order restraining respondents, Frank D. Graham, E. Allen Graham, trustee, W. Wilson Graham, Louis Brown, constable, R. M. Odom, deputy constable, and Messrs. Keller and Lewis, their attorneys, from executing the writ and from causing to be issued and executed any other such writ until further orders of court.

Although respondent Frank D. Graham was not a nominal party to the injunction suit, yet it is admitted that he is bound thereby. In the brief of respondents, the concession is made that, at the request of the holder of the note, E. Allen Graham, trustee, properly posted notices for sale of the property, under the powers in the deed of trust; they also say that, "For the purpose of this proceeding, the respondents herein will admit that the parties in cause No: 4868—A (the injunction suit) are in effect the same, and that Frank D. Graham is in fact bound by the order of this Honorable Court and of the 14th Judicial District Court in cause No. 4868—A * * *," and state further that "the sole question before this Honorable Court is whether or not the action of Frank D. Graham, the admitted legal owner and holder of the said second lien notes by the filing of the suit No. 4774—A and the issuing of a writ of sequestration therein, has interfered with the jurisdiction of this court over cause No. 11697," the injunction matter on appeal.

These candid statements eliminate from the case a possible confusing element, and very properly narrow the inquiry to the material question, i. e., would the seizure of the property, under the writ of sequestration sued out by Frank D. Graham, violate or render ineffective the injunction? If so, it is within our power, in fact our duty, to stay execution of the writ. Bell v. Young (Tex. Civ. App.) 20 S.W.(2d) 135; Life Ins. Co. of Virginia v. Sanders (Tex. Civ. App.) 62 S.W. (2d) 348.

If called upon to decide the question, we would doubtless adopt the view of respondents, i. e., that the unfinished and incomplete efforts to sell the property under the trust deed do not constitute such an election of a remedy as to estop the holder of the notes from abandoning the procedure and instituting the foreclosure suit, and seeking therein all incidental relief pertaining to such an action; but our opinion is that the doctrine of election has no application to the question under consideration, which, stated in its simplest form, relates to the sweep and scope of the injunction, prohibiting sale of the real estate under the trust deed, the ultimate purpose of which being to protect relators in the undisturbed possession of the property during the stay period provided in the Moratorium Act.

In view of the existence of a nation-wide depression, destructive alike of values and credit, rendering it difficult for any one to raise money on reasonable terms, the 43d Legislature, at its Regular Session, deemed it wise to enact chapter 102, known as the "Moratorium Law," providing that, on the terms and conditions mentioned in section 1 (Vernon's Ann. Civ. St. art. 2218b, § 1), suits, orders of sale, and executions could be stayed, and that by injunction, at the suit of a debtor, the sale of real estate under execution, order of sale, or deed of trust could be prevented, thus allowing an embarrassed debtor reasonable time within which to discharge the indebtedness and prevent sacrificial forced sale of his real estate. We recently sustained the constitutional validity of this act, see Lingo Lumber Co. v. Hayes, 64 S.W. (2d) 835, 840. We think it evident that the purpose of the Legislature was to protect the possession of a debtor, complying with the

462

conditions of the act, from being disturbed by any judicial proceedings or under any writ, during the period of stay, especially do we think the statute, authorizing seizure of property under writ of sequestration was suspended, in that the debtor, as a condition precedent to relief under the act, is required to negative the existence of facts that would authorize the issuance of the writ, as he is required to state under oath that the property upon which the lien is sought to be foreclosed is not being wasted, ill-treated, mismanaged, or destroyed, and is in substantially as good condition as when the lien was first executed, that the debtor has not, with intent to defeat or delay the collection of the indebtedness, or the enforcement of the lien, dissipated the property, or the rents and revenues theretofore derived therefrom. If relators are evicted under the writ of sequestration, the protection vouchsafed them by the injunction will, in our opinion, be denied.

Speaking of the regard that should always be given a writ of injunction, High, in his work on that subject, vol. 2 (4th Ed.), § 1433, p. 1444, says: "Nor will the court permit defendants to evade the responsibility for violating an injunction by doing through subterfuge that which, while not in terms a violation, yet produces the same effect by accomplishing substantially that which they were enjoined from doing." This doctrine was applied by the Supreme Court in Ward v. Billups, 76 Tex. 466, 13 S. W. 308. A temporary injunction had issued, restraining the sale under an order of sale, of property claimed to be a business homestead. Before a hearing could be had on the injunction matter, the order of sale was returned, an execution issued, under which the property claimed to be a business homestead was sold. Reviewing these facts, the Supreme Court held the sale under the execution in contempt of the injunction, and passed no title. Speaking of the purpose and scope of the injunction, the court said: "The object of plaintiffs' suit was to stop proceedings to sell the property until the question of homestead was adjudicated, and the object and purpose of the suit was to prevent the sale of the lot by any process of the court under the judgment until the court decided the homestead issue. Defendants attempted to defeat these purposes of the suit and the writ, by suing out execution, and causing sale to be made, before any adjudication of the homestead question, and while the injunction was still in force. This was a contempt of the court's order enjoining the sale; no title could pass by such proceeding. Seligson v. Collins, 64 Tex. 315; 2 High, Inj. §§ 1434, 1447; Rap. Contempt, § 51; Morris v. Bradford, 19 Ga. 527; Farnsworth v. Fowler, 1 Swan [Tenn.] 1 [55 Am. Dec. 718]." Another case in point is that of the State of Texas v. White & Chiles, by the United States Supreme Court, 22 Wall. 157, 166, 22 L. Ed. 819, 822. Defendants were perpetually enjoined from setting up any claim or title to any of the bonds and coupons constituting the subject-matter of the suit. Later, defendant Chiles asserted a different title from that held when the suit was brought, but was nevertheless held in contempt. The court said: " * * * We are of opinion that in such a case as this, in a suit in equity, when the obvious purpose of the bill is to establish and adjudicate the entire rights and title of the parties before the court to the bonds and their proceeds in all the forms in which they can be identified, the decree must be final and conclusive on all the rights of all the parties actually before the court." A similar question was before the Supreme Court of South Dakota, in Dennett v. Reisdorfer, 15 S. D. 466, 90 N. W. 138. An injunction issued, restraining the owner of property from interfering with the possession of another pending an appeal. The court held that, in view of the injunction, the owner could not obtain possession by virtue of a judgment of ouster, obtained in another court pending the appeal.

We hold, therefore, that the enforcement of the writ of sequestration issued in the foreclosure suit would violate the injunction and that relators are entitled to the relief for which they pray, and the same is granted.