## LANGEVER v. MILLER.
### No. 13003.

Court of Civil Appeals of Texas. Fort
Worth.

June 1, 1934.

Rehearing Denied June 22, 1934.

William R. Watkins, of Fort Worth, for appellant.

E. L. Gilbert and C. H. Milliken, both of Fort Worth, for appellee.

DUNKLIN, Chief Justice.

On October 4, 1932, H. H. Miller recovered a judgment in the district court of Tarrant county, Tex., against J. J. Langever for $1,338.29, with interest, and $82.65 costs of suit, with foreclosure of a mortgage lien on certain real estate situated in the city of Fort Worth, Tex. There was a foreclosure sale under that judgment of the property in accordance with the laws of the state of Texas to H. H. Miller, plaintiff in the suit, for the sum of $25, that being the highest bid offered, and the amount of the bid was credited on the judgment, leaving a deficiency judgment against Langever in the sum of $1,450.

The lien that was foreclosed by that judgment was subordinate to a prior first lien for the sum of $4,675 and also a lien for taxes in the sum of $100; all aggregating $4,775.

The present suit was instituted by Langever to procure a decree of court allowing him a credit on the deficiency judgment held by Miller in an amount equal to the difference between $25 bid by Miller in the sale and the market value of the property at that time, under the provisions of the Act of the 43d Legislature, c. 92, § 1, amending article 2218, tit. 41, c. 9, Rev. Civ. St. 1925 (Vernon's Ann. Civ. St. art. 2218), which amendment became effective April 21, 1933. See Acts of 43d Legislature, c. 92, p. 198 (Vernon's Ann. Civ. St. arts. 2218, 2218a). It was alleged in Langever's petition for that relief that the real estate sold under that foreclosure had an actual value at the time and place of sale in the sum of $6,500, and therefore its value over and above the outstanding lien superior to the lien which was foreclosed in the judgment was $1,725; and deducting therefrom the $25 bid by Miller at the sale leaves a balance of $1,700, which was in excess of the deficiency judgment.

A general demurrer was sustained to that petition on the ground that the act was unconstitutional. As alleged in the demurrer, the act of the Forty-Third Legislature, relied on by plaintiff, was in contravention of the provision of the following articles of the state and Federal Constitutions:

Section 16 of article 1, state Constitution: "No bill of attainder, ex post facto law, retroactive law, or any law impairing the obligation of contracts, shall be made."

Section 19 of article 1, state Constitution: "No citizen of this State shall be deprived of life, liberty, property, privileges or immunities, or in any manner disfranchised, except by the due course of the law of the land."

Section 10 of article 1, Federal Constitution: "No State shall * * * pass any Bill of Attainder, ex post facto Law, or Law impairing the Obligation of Contracts" etc.

Section 1, Amend. 14, Federal Constitution: "No State shall make or enforce any law which shall abridge the privileges or immunities of citizens of the United States; nor shall any State deprive any person of life, liberty, or property, without due process of law; nor deny to any person within its jurisdiction the equal protection of the laws."

Article 5, being the Fifth Amendment of the Constitution of the United States: "No person shall * * * be deprived of life, liberty, or property, without due process of law."

This appeal is prosecuted by Langever from that ruling of the court and the only question to be determined here, as stated in appellant's brief, is whether or not the provisions of the act of the Forty-Third Legislature with respect to credits to be allowed on a deficiency

judgment in a foreclosure proceeding upon real property is constitutional; it being expressly admitted that no such relief could be granted if article 2218 of the statutes had not been so amended as to include those provisions and if the foreclosure sale had been made thereunder.

The act of the Forty-Third Legislature referred to, with its caption, reads as follows: "An Act to amend Article 2218, Title 41, Chapter 9, of the Revised Civil Statutes of 1925, by providing that in cases of foreclosure of real property where the proceeds of the sale shall be insufficient to satisfy the judgment on the debt that the party obligated shall have the right to plead and prove the actual value of the property at the time and place of such sale and shall be entitled to a credit of any difference between its actual value and the sale price of such property; and providing that any action or writ seeking to enforce any deficiency judgment shall be commenced or application made therefor within six months from the date of any sale of real estate, and declaring an emergency.

"Be it enacted by the Legislature of the State of Texas:

"Section 1. That Article 2218, Title 41, Chapter 9, Revised Civil Statutes, 1925, be and the same is hereby amended so as to hereafter read as follows:

" 'Article 2218. Judgments for the foreclosure of mortgages and other liens shall be that the plaintiff recover his debt, damages and costs, with a foreclosure of the plaintiff's lien on the property subject thereto, and, except in judgments against executors, administrators and guardians, that an order of sale shall issue to the sheriff or any constable of the county where such property may be, directing him to seize and sell the same as under execution, in satisfaction of the judgment; and, if the property cannot be found, or if the proceeds of such sale be insufficient to satisfy the judgment, then to make the money, or any balance thereof remaining unpaid, out of any other property of the defendant, as in case of ordinary executions; providing that if the property be real property, and if the proceeds of such sale be insufficient to satisfy the judgment, and providing that if the mortgagee or lien holder has elected to foreclose his mortgage or lien to satisfy his debt, or if the property be real property, and if sold under deed of trust or other contract and the proceeds of such sale be insufficient to satisfy the debt, and the mortgagee or lien holder shall there-

after bring suit against the maker of the debt or any person who has assumed the payment thereof, or who is obligated thereon, or if a deficiency judgment exists after sale under execution or order of sale, the defendant or defendants in such suit may plead as a defense or partial defense to such suit or against such deficiency judgment that said property at such foreclosure was sold for less than its actual value, exclusive of superior liens including tax liens, at the time and place of such sale; and may by proper pleading and evidence show the actual value, exclusive of superior liens including tax liens, of such property at the time and place of such foreclosure sale; and if such actual value, exclusive of superior liens including tax liens, be shown to be more than the amount for which such property was sold at such foreclosure, the defendant or defendants shall be entitled to a credit upon such deficiency indebtedness of the difference between the amount of such foreclosure price and the actual value, exclusive of superior liens including tax liens, of such property at the time and place of such foreclosure sale. The burden of proof shall be upon the defendant to establish by clear and satisfactory evidence the facts necessary to establish his defense or offset or credit, and the court shall so instruct the jury.'

"Sec. 2. All actions for the recovery of any judgment on any note or notes secured by a lien on real estate shall be brought within six months after the date of any sale of the real estate security and no court shall have any jurisdiction to maintain any such action brought after such date.

"Sec. 3. No writ of execution, attachment, garnishment, or other writ or order seeking to enforce any money or deficiency judgment had on any note or other obligation secured by any lien on real estate shall ever be issued by any court of this State unless the application for said writ or order shall have been made within six (6) months after any sale shall have been had of any real estate securing the note or other obligation.

"Sec. 4. In no case where the lien is given or obtained to secure the payment of a debt for money or property procured by false representation, fraud or defalcation, shall the defendant be allowed to plead that the property sold at less than its actual value, but any sale fairly made under such lien shall be conclusively presumed to have been made for the actual value of such property sold.

"Sec. 5. The fact that many honest, hard working and worthy city home owners and farm owners are being foreclosed in these

hard, stringent and depressed times when their real estate is being bought in at foreclosure sales, in many instances, at unconscionably low prices by mortgage holders and lien holders who are securing deficiency judgments for the unpaid balance of the mortgage or lien held against these property holders, thereby, harassing and embarassing honest, worthy people by hanging unwarranted judgments over their heads and further depressing their spirits when calamity overtook them through no fault of their own, creates an emergency and an imperative public necessity that the Constitutional Rule requiring bills to be read in each House on three several days be suspended, and said Rule is hereby suspended, and this Act shall take effect and be in force from and after its passage, and it is so enacted." See Vernon's Ann. Civ. St. arts. 2218, 2218a.

Many authorities are cited by appellant announcing the general rule that statutes giving remedies for the enforcement of a contract may be properly amended provided they do not abridge or destroy substantive rights created by the terms of the contract, but further holding that, if such amendments of remedial statutes have the effect to lessen or impair such contractual rights, then they fall under the inhibition of the provisions of the state and Federal Constitutions, forbidding legislative enactments which impair the obligations of contracts theretofore made. In 6 R. C. L., beginning on page 355, there is a discussion of those constitutional provisions with a collation of a vast number of decisions, chiefly of the United States Supreme Court, in many of which remedial statutes were held violative of that constitutional guaranty because they abridged or destroyed certain rights growing out of the contracts as distinguished from the remedies for their enforcement. In view of the conclusion we have reached on that point, we deem it unnecessary to discuss at length the facts involved in those cases.

It is manifest that under the provisions of section 1 of the act quoted, if the holder of a promissory note, secured by a valid contract lien upon real estate, procures a judgment for the debt with foreclosure of lien, and the property is sold under that decree of foreclosure at public auction to the highest bidder, which is fixed by statute as its market value at that time and place, in the absence of a showing of fraud or irregularity preventing a more favorable bid, all in compliance with the statutes in such cases made and provided, and if either he or some stranger purchases the property at that sale for a sum less than the amount of the debt owing by the defendant as established by the judgment, then plaintiff is required to credit the deficiency judgment with the difference between the price realized at the execution sale, which was the market value of the property at that time and place, and the amount which a court or jury in a subsequent proceeding may, upon testimony of expert witnesses, find was its "actual value" at the same time and place; and that, too, in the absence of any attack on the sale under foreclosure on the ground of fraud or for any other reason that would render it voidable. That would destroy the creditor's contractual right to have payment of his debt in money and compel him to accept property in lieu thereof against his will, if he should purchase it at the foreclosure sale; and to allow the same credit if some stranger has purchased it at that sale, and had acquired full title thereto, free of any further charge, which clearly would impair the obligations of plaintiff's note and mortgage, and set at naught the guaranty of both the Federal and state Constitutions against legislation impairing obligations of contracts; and the further constitutional guaranty of equal protection of the law, and equal rights under the law. Article 1, § 3, state Constitution. The facts of the present suit afford an apt illustration of that point. If the property had been sold to A for $25 rather than to Miller, the plaintiff in the suit, then he would have acquired title for a consideration of $25, while, according to the provisions of the act, the same property will cost Miller $25, the amount for which he bought the property, plus a credit of $1,425 on his deficiency judgment as a further consideration for the same title that A would have bought for $25 as the full consideration.

This case is clearly distinguishable from the recent decision of the United States Supreme Court in Home Building & Loan Association v. Blaisdell, reported in 290 U. S. 398, 54 S. Ct. 231, 235, 78 L. Ed. 413, 88 A. L. R. 1481, in which a statute of the state of Minnesota was upheld as against the attack made that it was in contravention of the constitutional guaranty against the enactment of statutes impairing the obligations of contracts. That was what is termed a "Moratorium Act," passed as an emergency measure to protect home owners from impending danger of losing their property under foreclosure sales at great sacrifice of values, as the result of the general business depression prevailing throughout the country. But the extent of the relief provided for the home owner was the allowance of an extension of time within

which to meet such debts; as is apparent from the following excerpt from the majority opinion by Chief Justice Hughes:

"The statute does not impair the integrity of the mortgage indebtedness. The obligation for interest remains. The statute does not affect the validity of the sale or the right of a mortgagee-purchaser to title in fee, or his right to obtain a deficiency judgment, if the mortgagor fails to redeem within the prescribed period. Aside from the extension of time, the other conditions of redemption are unaltered. While the mortgagor remains in possession, he must pay the rental value as that value has been determined, upon notice and hearing, by the court. The rental value so paid is devoted to the carrying of the property by the application of the required payments to taxes, insurance, and interest on the mortgage indebtedness. While the mortgagee-purchaser is debarred from actual possession, he has, so far as rental value is concerned, the equivalent of possession during the extended period."

For the reasons stated, the judgment of the trial court sustaining the demurrer to appellant's petition is affirmed.