## J. J. LANGEVER v. H. H. MILLER.

Application No. 20,699. Decided November 21, 1934.

(76 S. W., 2d Series, 1025.)

William R. Watkins, of Fort Worth, for plaintiff in error.

MR. CHIEF JUSTICE CURETON delivered the opinion of the court.

This case is before us on application for writ of error. We have concluded that the application should be refused, and will state our reasons therefor.

The only question involved is the constitutionality of the Anti-Deficiency Judgment Law, approved April 21, 1933, now Chapter 92, General Laws, Regular Session of the 43d Legislature.

H. H. Miller, the defendant in error, obtained a judgment against the plaintiff in error on October 4, 1932, (long before the enactment of the statute here involved), for $1,338.29, with interest and $82.65 cost, and foreclosure of a second mortgage lien on real property in Fort Worth. Order of sale issued on the foreclosure judgment, the property was sold as provided by law, and was purchased at the sale by Miller, the defendant in error, for $25.00, leaving a then existing deficiency judgment for approximately $1,450.00. The plaintiff in error, Langever, the judgment debtor, then instituted this suit under the Act above named, for the purpose of ascertaining the actual value of the property sold under the foreclosure proceedings, exclusive of amounts secured by superior and tax liens, and having the amount thereof, less the $25.00 for which it sold, credited on the deficiency judgment. Allegations were made in the petition that at the time and place of sale the property was actually worth more, exclusive of the amounts secured by judgment and tax liens, than the amount of the deficiency judgment. In fact, it was stated in Langever's petition that the aggregate of the amounts due under superior and tax liens was $4,775.00, while the property at the time and place of sale was worth $6,500.00, or some $1,700.00 in excess of what it sold for under the order of sale. Against this petition the defendant in error urged demurrers based on the invalidity of the legislature Act, and by virtue of which plaintiff in error claimed the relief he prayed for. The demurrers were sustained, and the cause dismissed by the District Court. Langever appealed, and the Court of Civil Appeals, having concluded that the legislative Act involved was unconsti-

tutional and void, affirmed the judgment of the District Court. (73 S. W. (2d) 634.)

■ The laws, at least as to substantial rights and remedies, existing at the time a contract is made, become a part of the contract. 9 Texas Jur., p. 544, sec. 110; Jones on Mortgages (8th ed.), Vol. 3, sec. 1694; 19 Ruling Case Law, p. 302, sec. 77; McLane v. Paschal, 62 Texas, 102; Thompson v. Cobb, 95 Texas, 140; International B. & L. A. v. Hardy, 86 Texas, 610; Dallas Co. L. I. Dist. v. Rugel, 36 S. W. (2d) 188; Life Ins. Co. v. Sanders, 62 S. W. (2d) 348, 353; Vanderbilt v. Brunton Piano Co., 111 N. J. L., 596, 169 Atl., 177; O'Brien v. Kreuz, 36 Minn., 136, 30 N. W., 458, 460; Adams v. Spillyards, 187 Ark., 641, 61 S. W. (2d) 686; 86 A. L. R., 1493; Walker v. Whitehead, 16 Wall., 314, 317; Bronson v. Kenzie, 1 How., 311; Edwards v. Kearzey, 96 U. S., 595, 600.

■ To this we may add, that since the Constitution is also a law—the supreme law—Sec. 16, Art. 1, prohibiting the enactment of laws impairing the obligation of contracts also becomes a part of each contract, protecting it to the extent of the meaning of that clause from impairment even by constitutional amendment.

Our statute regulating judgments upon foreclosure of mortgages and other liens has been a part of our statutes since 1846, and was the law when the judgment here involved was rendered. This statute, Art. 2218, then read:

"Judgments for the foreclosure of mortgages and other liens shall be that the plaintiff recover his debt, damages and costs, with a foreclosure of the plaintiff's lien on the property subject thereto, and, except in judgments against executors, administrators and guardians, that an order of sale shall issue to the sheriff or any constable of the county where such property may be, directing him to seize and sell the same as under execution, in satisfaction of the judgment; and, if the property cannot be found, or if the proceeds of such sale be insufficient to satisfy the judgment, then to make the money, or any balance thereof remaining unpaid, out of any other property of the defendant, as in case of ordinary executions."

Under the terms of this statute, when the judgment before us was rendered, Miller, the plaintiff in error, held and owned a valid, subsisting, and unsatisfied deficiency judgment for approximately $1,450.00. To satisfy this judgment he was then entitled under the statute to seize and sell as under

execution any other property of the plaintiff in error subject to execution. 26 Texas Jur., p. 928, sec. 102, p. 930, sec. 103; 3 Jones on Mortgages (8th ed.), sec. 1739; 42 Corpus Juris, p. 284, sec. 1963, p. 285, sec. 1964; Bailey v. Block, 104 Texas, 101. This was the status of defendant in error's judgment debt and the statutory remedy for its collection when the Legislature passed the law here involved. That measure, Chapter 92, General Laws 43d Legislature, Regular Session, after re-enacting Art. 2218, as copied above, followed it in the same section with the provisions shown below and certain other sections. The Act, in so far as here involved, reads:

"Section 1. That Article 2218, Title 41, Chapter 9, Revised Civil Statutes, 1925, be and the same is hereby amended so as to hereafter read as follows:

" 'Article 2218. (Here follows Article 2218 just as we have copied it above.) * * *

"Providing that if the property be real property, and if the proceeds of such sale be insufficient to satisfy the judgment, and providing that if the mortgagee or lien holder has elected to foreclose his mortgage or lien to satisfy his debt, or if the property be real property, and if sold under deed of trust or other contract and the proceeds of such sale be insufficient to satisfy the debt, and the mortgagee or lien holder shall thereafter bring suit against the maker of the debt or any person who has assumed the payment thereof, or who is obligated thereon, or if a deficiency judgment exists after sale under execution or order of sale, the defendant or defendants in such suit may plead as a defense or partial defense to such suit or against such deficiency judgment that said property at such foreclosure was sold for less than its actual value, exclusive of superior liens including tax liens, at the time and place of such sale; and may by proper pleading and evidence show the actual value, exclusive of superior liens including tax liens, of such property at the time and place of such foreclosure sale; and if such actual value, exclusive of superior liens including tax liens, be shown to be more than the amount for which such property was sold at such foreclosure, the defendant or defendants shall be entitled to a credit upon such deficiency indebtedness of the difference between the amount of such foreclosure price and the actual value, exclusive of superior liens including tax liens, of such property at the time and place of such foreclosure sale. The burden of proof shall be upon the defendant to establish by

clear and satisfactory evidence the facts necessary to establish his defense or offset or credit, and the court shall so instruct the jury.'

"Sec. 2. All actions for the recovery of any judgment on any note or notes secured by a lien on real estate shall be brought within six months after the date of any sale of the real estate security and no court shall have any jurisdiction to maintain any such action brought after such date.

"Sec. 3. No writ of execution, attachment, garnishment, or other writ or order seeking to enforce any money or deficiency judgment had on any note or other obligation secured by any lien on real estate shall ever be issued by any court of this State unless the application for said writ or order shall have been made within six (6) months after any sale shall have been had of any real estate securing the note or other obligation."

Section 4 exempts from the provisions of the statutes liens, etc., given to secure the payment of money secured by fraud, etc.

Section 5 of the Act is the emergency clause, which shows that the prime purpose of the measure was to give relief from then existing contracts and judgments. This clause reads:

"Sec. 5. The fact that many honest, hard working and worthy city home owners and farm owners are being foreclosed in these hard, stringent and depressed times when their real estate is being bought in at foreclosure sales, in many instances, at unconscionably low prices by mortgage holders and lien holders who are securing deficiency judgments for the unpaid balance of the mortgage or lien held against these property holders, thereby, harassing and embarrassing honest, worthy people by hanging unwarranted judgments over their heads and further depressing their spirits when calamity overtook them through no fault of their own, creates an emergency and an imperative public necessity that the Constitutional Rule requiring bills to be read in each House on three several days be suspended, and said Rule is hereby suspended, and this Act shall take effect and be in force from and after its passage, and it is so enacted."

It is obvious that the legal effect of this Act is to cancel all deficiency judgments to the extent of the difference between the actual value of the property sold under foreclosure and the amount which it may have brought at such sale, pro-

vided, of course, an action is brought by the judgment debtor for such purpose, and the necessary proof of value made. In the case of sales under deeds of trust without judicial foreclosure, the effect is the same, since the purpose of the law is to deny recovery of a deficiency judgment for any amount, save and except when the value of the property involved is less than the amount of the debt in satisfaction of which the sale under the deed of trust or mortgage may have taken place. In the one instance a solemn judgment in legal effect is cancelled; in the other judgment is denied to the same extent that it would be cancelled had a deficiency been previously entered.

To state the case, it seems to us, is to show conclusively that the Act violates Sec. 16, Art. 1, of the Constitution of Texas, which declares:

"Sec. 16. No bill of attainder, ex post facto law, retroactive law, or *any law impairing the obligation of contracts, shall be made.*" (Italics ours).

■ In the case of Travelers' Insurance Co. v. Marshall, this day decided (ante, p. 45), we held that the existence of the present industrial depression, graphically described in the emergency clause to the measure before us, does not authorize the Legislature under the *police power, "one of the general powers of government,"* to enact even emergency legislation of a limited duration impairing the obligation of contracts. That opinion is controlling here, and if the Act before us *"impairs the obligation of contracts,"* it is unconstitutional and void, regardless of the occasion of its enactment.

■ The Act in the instant case, while passed because of the prevailing industrial depression, is not a limited duration. Its effect is not confined to the period of emergency conditions, as were the Housing and Rents Cases (Block v. Hirsh, 256 U. S., 135, 41 Sup Ct., 458, 65 L. Ed., 865; Marcus Brown Holding Co. v. Feldman, 256 U. S., 170, 41 Sup. Ct., 465, 65 L. Ed., 877; Edgar A. Levy Leasing Co. v. Siegel, 258 U. S., 242, 42 Sup. Ct., 289, 66 L. Ed., 595) and the Blaisdell Case (290 U. S., 398, 54 Sup Ct., 231, 78 L. Ed., 413, 88 A. L. R., 1481), but it is a permanent law intended to prevail until repealed or amended by the Legislature. That line of cases would not sustain the validity of the Act, even though we had reached a conclusion contrary to that expressed in the Marshall Case cited above. Vanderbilt v. Brunton Piano Co., 111 N. J. L., 596, 169 Atl., 177, 180.

■ We do not gainsay the proposition that the Legislature

may change judicial methods and remedies for the enforcement of contracts. That is a rule of universal acceptation, and is well within the terms of our own organic law providing for a judicial system and authorizing the Legislature to "pass such laws as may be necessary to carry into effect the provisions of this Constitution." (Const., Art. 3, Sec. 42, and Art. 5). This power, however, to "pass such laws", etc., is subject to the limitations contained in the Bill of Rights; Sec. 16, Art. 1 of which prohibits the enactment of laws impairing the obligation of contracts. It is subject to that limitation because the Constitution, Sec. 29, Art. 1, declares:

"Sec. 29. To guard against transgressions of the high powers herein delegated, we declare that everything in this 'Bill of Rights' is excepted out of the general powers of government, and shall forever remain inviolate, and all laws contrary thereto, * * * shall be void."

Interpreting the various provisions of the Constitution creating a judicial department for the State, including the clause to the effect that the Legislature shall pass such laws as may be necessary to carry into effect the Constitution, in the light of Sections 16 and 29 of Article 1, we are of the opinion that when a legislative Act pertaining to the judicial enforcement of contract rights reaches the point where its effect is to impair the obligation of contracts, it is void. Travelers' Ins. Co. v. Marshall, supra, and authorities there cited; 12 Corpus Juris, p. 825, sec. 286, p. 826, sec. 291.

As said by Corpus Juris:

"The legislature has power to formulate, prescribe, enlarge, modify, and alter remedies, provided, however, that it does not, under the guise of a statute relating to procedure, attempt to deprive any person of a right secured to him by the constitution, as for example, by an act which impairs the obligation of a contract, or impairs vested property rights." (Sec. 286).

"Thus the legislature may regulate the procedure by which jurisdiction conferred by the constitution may be exercised, may regulate equity procedure, the administration of estates of deceased persons, and procedure in the appellate courts; but it may not substantially impair the constitutional jurisdiction granted nor practically defeat its exercise. It is not competent to make such changes as to impair the enforcement of rights." (Sec. 291).

■ We are not much concerned with the superfine distinction sometimes drawn in discussing the impairment of the obliga-

tion of contracts, between the "obligation" and the "remedies" for their enforcement. We agree with what the Supreme Court of Alabama said in the case of Sanders v. Cabaniss, 43 Ala., 173, 188, when discussing legislative encroachments on the Judiciary: "It is a very clear proposition, that what can not lawfully be done directly, can not be done indirectly—no device, though it be so cunningly contrived as to make wrong appear to be right, can justify it." It seems to us that the Act before us does in fact operate upon and impair the "obligation" of the contract, in that it nullifies that portion of the contract, read in the light of the then existing statute, which entitled the mortgagee to a deficiency judgment. But if the statute be regarded as one which merely operates upon the remedy or remedies for the enforcement of the contract, it is obvious that it abridges the rights of the mortgagee resulting from the stipulations in the agreement in such manner as to make the contract less valuable, and denies him lawful remedies which existed when the instrument was executed without substituting therefor others equally valuable and equally effective.

Under either conception of the effect of the statute, it impairs the obligation of contracts. Travelers' Ins. Co. v. Marshall, supra, and authorities cited; Story on the Constitution (4th ed.), Vol. 2, p. 245, sec. 1385; Adams v. Spillyards, 187 Ark., 641, 61 S. W. (2d) 686, 86 A. L. R., 1493 (1933-1933); Burrows v. Vanderberg, 69 Neb., 43, 95 N. W., 57 (1897-1903); Dennis v. Moses, 18 Wash., 537, 40 L. R. A., 302, 52 Pac., 333; Vanderbilt, Trustee, v. Brunton Piano Co., 111 N. J. L., 596, 169 Atl., 177; Goldberg v. Fisher, 168 Atl., 232, 235; 19 Ruling Case Law, p. 669, sec. 484; Bronson v. Kinzie, 1 How., 311; McCracken v. Hayward, 2 How., 608; Gantley's Lessee v. Ewing, 3 How., 707; Gunn v. Barry, 15 Wall., 610; Howard v. Bugbee, 24 How., 461; Edwards v. Kearzey, 96 U. S. 595; Jones on Mortgages (8th ed.), Vol. 3 secs. 1693, 1694; Kent's Commentaries (13th ed.), Vol. 1, p. 419; Page on Contracts, Vol. 3, secs. 1762, 1765; Elliott on Contracts, Vol. 8, secs. 2721, 2731, and 1913-1923 Supplement, secs. 2731, 2721, id. Vol. 3, secs 2730, 2731; 12 Corpus Juris, p. 1057, sec. 703, id. p. 1059, sec. 707, p. 1067, sec. 727, p. 1070, sec. 728, p. 1071, sec. 732, p. 1083, sec. 775; Skinner v. Holt, 9 So. Dakota, 427, 62 Am. St. Rep., 878; People v. Common Council, 140 N. Y., 300, 37 Am. St. Rep., 563; Gilman v. Tucker, 128 N. Y., 190; 28 N. E., 1040, 26 Am. St. Rep., 464, 13 L. R. A., 304; Bettman v. Cowley, 19 Wash.,

207, 53 Pac., 53, 40 L. R. A., 815; Douglas v. Loftus, 85 Kan., 720, 119 Pac., 74, L. R. A., 1915B, 797; Davidson v. Richardson, 50 Oregon, 323, 126 Am. St. Rep., 738, 17 L. R. A. (N. S.), 319; Weaver v. Lapsley, 43 Ala., 224; O'Brien v. Krenz, 36 Minn., 136, 30 N. W., 458; Mundy v. Monroe, 1 Mich., 68.

We have read in the books that the early tradition was that James Wilson, learned in the Civil Laws as well as in the Common Law, a member of the Constitutional Convention in 1787, suggested the phraseology of the contract clause of the Federal Constitution; and certainly the use of the word "obligation" in the clause tends to support the theory of its derivation from Civil Law sources. At any rate, the Civil Law definition has become a part of the current juridical conception of the meaning of the term. Sherman's Roman Law in the Modern World, Vol. 1, sec. 7, p. 9; Vol. 2, sec. 569, p. 145; sec. 746, p. 314.

In the cases of Ogden v. Saunders, 12 Wheat. (25 U. S.), pp. 317, 318, Associate Justice Trimble quotes the Civil Law definition of "obligation" as used with reference to contracts, and himself formulates a definition of the obligation of contracts, consistent with the Civil Law conception, which was subsequently accepted by the Supreme Court of the United States. He says:

"The Institutes, lib. 3, tit. 14 (13), (Cooper's translation), says, 'an obligation is the chain of the law, by which we are necessarily bound to make some payment, according to the law of the land.'[1]

"Pothier, in his treatise concerning obligations, in speaking of the obligation of contracts, calls it *vinculum legis,* the chain of the law. Paley, p. 56, says, 'to be obliged, is to be urged by a violent motive, resulting from the command of another.' From these authorities, and many more might be cited, it may be fairly concluded that the obligation of the contract consists in the power and efficacy of the law which applies to and enforces performance of the contracts, or the payment of an equivalent for nonperformance. The obligation does not inhere and subsist in the contract itself, *proprio vigore,* but in

---

[1]As translated in the recent work by Scott, The Civil Law, Vol. 2, p. 109, Justinian's Enactments, Book 3, Title 13, the definition reads:

"An obligation is a bond of law by which we are reduced to the necessity of paying something in compliance with the laws of our state."

The Latin text, as edited by Moyle (5th ed.), p. 391, is as follows:

*"Obligatio est juris vinculum, quo necessitate adstringimur alicuius solvendae rei secundum nostrae civitatis iura."*

the law applicable to the contract. This is the sense, I think, in which the constitution uses the term 'obligation'."

In Sturges v. Crowninshield, 14 Wheat. (17 U. S.), 122, 197, the Court stated that the obligation of a contract is the law which binds the parties to perform their agreement.

In Louisiana v. New Orleans, 102 U. S., 203, Associate Justice Field declared:

"The obligation of a contract, in the constitutional sense, is the means provided by law by which it can be enforced,—by which the parties can be obliged to perform it. Whatever legislation lessens the efficacy of these means impairs the obligation. If it tend to postpone or retard the enforcement of the contract, the obligation of the latter is to that extent weakened. The Lain proverb, *qui cito dat bis dat*,—he who gives quickly gives twice,—has its counterpart in a maxim equally sound,— *qui serius solvit, minus solvit*,—he who pays too late, pays less. Any authorization of the postponement of payment, or of means by which such postponement may be effected, is in conflict with the constitutional inhibition."

In Edwards v. Kearzey, 96 U. S., 595, 600, the Supreme Court reviewed at length the subject here under consideration, and in part said:

"The obligation of a contract includes everything within its obligatory scope. Among these elements nothing is more important than the means of enforcement. This is the breath of its vital existence. Without it, the contract, as such, in the view of the law, ceases to be, and falls into the class of those 'imperfect obligations,' as they are termed, which depend for their fulfilment upon the will and conscience of those upon whom they rest. The ideas of right and remedy are inseparable. 'Want of right and want of remedy are the same thing.' 1 Bac. Abr., tit. Actions in General, letter B.

"In Von Hoffman v. City of Quincy (4 Wall., 535), it was said: 'A statute of frauds embracing pre-existing parol contracts not before required to be in writing would affect its validity. A statute declaring that the word 'ton' should, in prior as well as subsequent contracts, be held to mean half or double the weight before prescribed, would affect its construction. A statute providing that a previous contract of indebtedness may be extinguished by a process of bankruptcy would involve its discharge; and a statute forbidding the sale of the debtor's property under a judgment upon such a contract would relate to the remedy.'

"It cannot be doubted, either upon principle or authority,

that each of such laws would violate the obligation of the contract, and the last not less than the first. These propositions seem to us too clear to require discussion. It is also the settled doctrine of this court, that the laws which subsist at the time and place of making a contract enter into and form a part of it, as if they were expressly referred to or incorporated in its terms. *This rule embraces alike those which affect its validity, construction, discharge, and enforcement.* Von Hoffman v. City of Quincy, supra; McCracken v. Hayward, 2 How., 608.

"In Green v. Biddle (8 Wheat., 1), this court said, touching the point here under consideration: 'It is no answer, that the acts of Kentucky now in question are regulations of the remedy, and not of the right to the lands. If these acts so change the nature and extent of existing remedies as materially to impair the rights and interests of the owner, they are just as much a violation of the compact as if they overturned his rights and interests.'

" '*One of the tests that a contract has been impaired is, that its value has by legislation been diminished. It is not by the Constitution to be impaired at all. This is not a question of degree or manner or cause, but of encroaching in any respect on its obligation,—dispensing with any part of its force.*' Planters' Bank v. Sharp et al., 6 How., 301.

"It is to be understood that the encroachment thus denounced must be material. If it be not material, it will be regarded as of no account.

"These rules are axioms in the jurisprudence of this court. We think they rest upon a solid foundation." (Italics ours).

In Walker v. Whitehead, 16 Wall. (83 U. S.), 314, 317, the court said:

"The Constitution of the United States declares that no State shall pass any 'law impairing the obligation of contracts.'

"These propositions may be considered consequent axioms in our jurisprudence:

"The laws which exist at the time and place of the making of a contract, and where it is to be performed, enter into and form a part of it. This embraces alike those which affect its validity, construction, discharge, and enforcement;

"Nothing is more material to the obligation of a contract than the means of its enforcement. The ideas of validity and remedy are inseparable, and both are parts of the obligation which is guaranteed by the Constitution against impairment;

"The obligation of a contract 'is the law which binds the parties to perform their agreement';

"Any impairment of the obligation of a contract—the degree of impairment is immaterial—is within the prohibition of the Constitution;

"The States may change the remedy, provided no substantial right secured by the contract is impaired. Whenever such a result is produced by the act in question, to that extent it is void. The States are no more permitted to impair the efficacy of a contract in this way than to attack its vitality in any other manner. Against all assaults coming from that quarter, whatever guise they may assume, the contract is shielded by the Constitution. It must be left with the same force and effect, including the substantial means of enforcement, which existed when it was made."

In Barnitz v. Beverly, 163 U. S., 118, 127, the court said:

"In the recent case of Tennessee v. Sneed, 96 U. S., 69, we held that so long as there remained a sufficient remedy on the contract, an act of the legislature, changing the form of the remedy, did not impair the obligation of the contract. But this doctrine was said to be subject to the limitation that there remained a remedy which was complete, and which secured all the substantial rights of the party. At all events, the decisions of this court are numerous that the laws which prescribe the mode of enforcing a contract, which are in existence when it is made, are so far a part of the contract that no changes in these laws which seriously interfere with that enforcement are valid, because they impair its obligation within the meaning of the Constitution of the United States."

In McGahey v. Virginia, 125 U. S., 662, 693, the court affirmed:

"It is well settled by the adjudications of this court, that the obligation of a contract is impaired, in the sense of the Constitution, by any act which prevents its enforcement, or which materially abridges the remedy for enforcing it, which existed at the time it was contracted, and does not supply an alternative remedy equally adequate and efficacious."

Jones on Mortgages, Vol. 3, secs. 1693, 1694, states the rule as follows:

"While minor details of the law relating to the remedy of foreclosure may be changed by statute, no substantial rights of the mortgagee to the enforcement of his security can be impaired or taken away; for example, by laws which delay foreclosure proceedings on which the mortgagee relied in taking the mortgage, or which enlarge the conditions of redemption, or deprive the mortgagee of his right to take possession of his

security at the time agreed. * * * The law in force when the mortgage was executed must be followed in foreclosing it, and in redeeming from sale, though there be a change in the meantime. The remedy so provided becomes a part of the contract of the parties, and any change by statute substantially affecting it, to the injury of the mortgagee, is held to be a law impairing 'the obligation of the contract,' within the meaning of the Constitution of the United States."

Judge Story in his Commentaries on the Constitution states:

"It is perfectly clear, that any law, which enlarges, abridges, or in any manner changes the intention of the parties, resulting from the stipulations in the contract, necessarily impairs it. The manner or degree in which this change is effected can in no respect influence the conclusion; for whether the law affects the validity, the construction, the duration, the discharge, or the evidence of the contract, it impairs its obligation, though it may not do so to the same extent in all the supposed cases. Any deviation from its terms by postponing or accelerating the period of performance which it prescribes; imposing conditions not expressed in the contract; or dispensing with the performance of those which are a part of the contract; however minute or apparently immaterial in their effect upon it, impairs its obligation." Story on the Constitution (4th ed.), Vol. 2, p. 245, sec. 1385.

The Texas authorities in effect follow the rule laid down in the above quotations. International B. & L. Assn. v. Hardy, 86 Texas, 610 (1894); 9 Tex. Jur., p. 541, secs. 106, 108, 109, 110, and cases cited in the notes; McLane v. Paschal, 62 Texas, 102; Thompson v. Cobb, 95 Texas, 140; Life Insurance Company v. Sanders, 62 S. W. (2d) 348; Dallas County L. I. District v. Rugel, 36 S. W. (2d) 188; Murphy v. Phillips, 63 S. W. (2d) 404; Travelers' Insurance Company v. Marshall, this day decided, ante, p. 45.

Vol. 9, Texas Jurisprudence, p. 543, sec. 108, declares:

"The utmost freedom to enter into any contract permitted by existing law is the inherent right of every citizen, and when he exercises that right in a lawful way, no Legislature has the power to disturb the purposes or effect, or in any manner rewrite any of the provisions of that contract, or make a new contract for him, and the right to comply with and enforce its provisions as written is fixed and vested. The degree in which the offending statute may impair the obligation of contract is immaterial. The only question is, Has the obligation been encroached upon in any respect?"

In Section 110, cited above, the same authority states:

"Within the purview of the provision in question a distinction is drawn between the obligation of a contract and the remedy which is given by the legislature to enforce that obligation. The legislature may properly enact a statute which modifies a remedy, provided that some substantial remedy be in fact left. * * * Parties contract with reference to existing laws which determine and fix the obligation of contract, the correlative rights and duties springing from it, and not to laws or mere procedure prescribing remedies. With reference to these, there is ordinarily no obligation arising, but the contract is made in contemplation of the power of the legislature to change them. Of course, all remedy cannot be taken away, nor can the existing remedy be so altered as to take away or impair any of the rights given by the contract as interpreted by existing law."

In the case of Dallas County Levee I. D. v. Rugel, 36 S. W. (2d) 188, 189, the Commission of Appeals, in an opinion upon which we reversed and rendered the case, held that the Act there involved impaired the obligation of contracts. The Commission in part said:

"Any impairment of the obligation of a contract is within the prohibition of the Constitution; the degree of impairment being immaterial. Walker v. Whitehead, 16 Wall., 314, 21 L. Ed., 357.

"By the obligation of a contract is meant the means, which at the time of its creation the law afforded for its enforcement. Louisiana v. St. Martin's Parish, 111 U. S., 716, 4 S. Ct., 648, 28 L. Ed., 574; Von Hoffman v. Quincy, 4 Wall., 535, 18 L. Ed., 403.

" 'While it is undoubted,' says Ruling Case Law (Volume 6, sec. 321), 'that the legislature may make changes in the remedy, it is necessary that the contract should be left with the same force and effect, including the substantial means of enforcement, which existed when it was made.'

"By the same authority the doctrine is announced that the most certain test of impairment is that the value of the contract has been diminished. Volume 6, sec. 320."

■ We will now refer to cases applying the principles enunciated in the authorities from which we have quoted to legislative acts attempting to abolish deficiency judgments as applied to pre-existing contracts.

In the case of Vanderbilt v. Brunton Piano Company, 111 N. J. L., 596, 169 Atl., 177, the New Jersey Court of Errors and Appeals held, as stated in the Reporter's headnotes, that:

"Amendment, substituting fair market value of property determined in action on mortgage bond in place of proceeds of foreclosure sale as credit to be allowed debtor in reduction of debt, constitutes unconstitutional impairment of pre-existing contract and cannot be sustained as exercise of police power, since it does not provide remedy of substantially like character with that existing in Chancery Court and involves right and not mere procedure."

In reaching the conclusion stated, the Court, in part said:

"It is unimportant that the foreclosure sale in the case at bar was to the mortgagee himself. The statute applies, without distinction, whether the sale be to the mortgagee or to a third party, and the statute is incapable of dissection so that it may be held to apply in the one instance and not in the other. There is no legal obligation upon a mortgagee either to bid up, or to bid in, the property at the foreclosure sale, and the impairment of his contract is the more obvious when the property is struck off to a third person at a figure less than that subsequently fixed in the action on the bond as the 'fair market value.' In such a posture the mortgagee has no further recourse to the property itself; the property is gone with no right of redemption in him. He is compelled to forfeit a part of the debt which his contract, valid and enforceable when made, gave him; at least his remedy for enforcing the contract has been taken away. On the first assumption, his contract is impaired. On the second, he is deprived of a remedy. The law that accomplishes the former of these results is in conflict with both the Federal and the State Constitutions, and one that accomplishes the latter is in conflict with the State Constitution. In truth, the taking away of the remedy in the supposed instance is inseparably combined with an equivalent to the taking away of the right itself. * * * The statutory setting up of fair market value, standing stark and alone, as a self-sufficient, resistless fact in reduction of an otherwise collectible debt is such a restriction and limitation upon the mortgagee's right of recovery as to be an impairment of a pre-existing contract. * * * As to appellants' second point, it is clear from the foregoing discussion, without more, that a right and not a mere procedure is involved. If a legislative act so changes the nature and extent of an existing remedy as to impair the rights and interest of the owner, it is just as much a violation of the compact as if it directly overturned his rights and interests. Bronson v. Kinzie, supra; McCracken v. Hayward, 2 How., 608, 11

L. Ed., 397; Lessee of Gantly et al. v. Ewing, 3 How., 708, 11 L. Ed., 794, 798."

This case was followed in Goldberg v. Fisher, 168 Atl., 232.

In the case of Adams v. Spillyards, 187 Ark., 641, 61 S. W. (2d) 686, 86 A. L. R., 1493, the Supreme Court of Arkansas held that a statute prohibiting deficiency judgments in mortgage foreclosures, as to pre-existing contracts, was unconstitutional, because impairing the obligations of contracts. As stated in the A. L. R. Reporter's headnotes, the court held:

"As personal liability to a deficiency judgment, authorized by law at the time of execution of a mortgage, is part of the contract, an act depriving the mortgagee of such right, by requiring him to bid at the foreclosure sale the amount of the debt, interest, and costs, unconstitutionally impairs the obligation of mortgages executed prior to its enactment."

The object and purpose of the Arkansas statute was precisely the same as that of the Act under consideration. As to this, the court said:

"The undisputed effect of sections 1 and 2 of the act is to prohibit deficiency judgments in mortgage foreclosures in chancery courts, a legal possible right inherent in all existing Arkansas mortgages at the effective date of the act, which was a part of the mortgage contracts themselves. This personal liability was a part of the contract because authorized by law at the time of execution and in the place of performance. The principal object of Act No. 57 was to take away from the mortgagee that right, and of necessity violates the obligations of all existing mortgage contracts. Sections 3 and 4 undertake to change the rule many times announced by this court, and of long duration, that the court cannot refuse to confirm a judicial sale for mere inadequacy of consideration except for fraud, unfairness, or some other inequitable conduct of the sale. See Marten v. Jirkovsky, 174 Ark., 417, 295 S. W., 365; Free v. Harris, 181 Ark., 647, 27 S. W. (2d) 510. This was the law as to all existing mortgages, became a part of them, and related to a substantial remedy to collect the debts for which they were given."

The court then, after reviewing the authorities, held the Act void, as stated above.

In the case of Travelers' Insurance Co. v. Marshall, decided today (ante, p. 45), we cited a line of authorities holding void Acts prohibiting the judicial sale of property for less than its appraised value or a named percentage thereof. These authorities are applicable here. Robards v. Brown, 40 Ark., 423 (1879-

1883); Swinburne v. Mills, 17 Wash., 611, 61 Am. St. Rep., 932 (1897-1897); Sheets v. Peabody, 7 Blackf. (Ind.) 613 (1843-1845); Collins v. Collins, 79 Ky., 88 (1878-1880); Elliott on Contracts, Vol. 3, sec. 2732, p. 925, and many cases in the notes; Wolf v. Heath, 7 Blackf. (Ind.) 154 (?-1844); Franklin v. Thurston, 8 Blackf. (Ind.) 160 (1843-1846); Stewart v. Vermilyea, 8 Blackf. (Ind.) 56 (1843-1846).

In Adams v. Spillyards, supra, the Supreme Court of Arkansas discussed the case first cited above, Robards v. Brown, and demonstrated its applicability to the deficiency judgment statute there involved. We think a similar application of the entire line of cases cited, as well as Bronson v. Kinzie, McCracken v. Hayward, and Gantley's Lessees v. Ewing, all United States Supreme Court cases cited above, may be made in the instant case. The object or effect of the several statutes held void in the above cases because impairing the obligation of contracts was to force the mortgagee to bid a certain percentage of the value of the mortgaged property upon forced sale, and in that way to force a credit on the debtor's obligation to that extent. That is the purpose of the Act before us, and if the one impaired the obligation of contracts, it is plain that the other accomplishes the same result in a different manner, and is equally condemned by the constitutional provision.

The same application may be given to the line of cases cited by us in Insurance Co. v. Marshall, supra, which hold void Acts prohibiting the confirmation of judicial sales of property for less than its fair value. Rawley v. Hooker, 21 Ind., 144, and Federal Land Bank v. Floyd, 187 Ark., 616, 61 S. W. (2d) 449.

The judgment in this case did not arise out of a tort, but one of contract, and the statutory remedies for enforcing the contract, that is judgment and execution, were the appropriate means of enforcing the contractual obligation. The statute before us not only impairs these remedies, but under the facts before us nullifies the deficiency judgment. We may correctly say of this statute, in the language of Associate Justice Swayne, in Gunn v. Barry, 15 Wall. (U. S.), 610, 622:

"If the remedy is a part of the obligation of the contract, a clearer case of impairment can hardly occur than is presented in the record before us. The effect of the act in question, under the circumstances of this judgment, does not indeed merely impair, it annihilates the remedy. There is none left."

In the case of Worthen Co. et al. v. Thomas, 292 U. S., 426, the Supreme Court of the United States had before it an Act

of the State of Arkansas which withdrew from the process of garnishment funds due or to become due under insurance policies. In that case the policy was matured by death of the insured before the enactment of the law. The Supreme Court of the United States, in an opinion by Chief Justice Hughes, held the law unconstitutional, because impairing the obligation of contracts, in part saying:

. . "The argument of appellee that a judgment is not in itself a contract within the constitutional protection, and that it is competent for the. State to alter or modify forms of remedies, is unavailing. . The judgment and garnishment in the instant case afforded the appropriate means of enforcing the contract- ual obligations of the firm of which appellee was a member and the statute altered substantial rights. Gunn v. Barry, supra.; Edwards v. Kearzey, supra; Fisk v. Jefferson Police Jury, 116 U. S., 131, 134; Home Building & Loan Association v. Blaisdell, 290 U. S., 398, 430.

> \* \* \* \* \*

"We find the legislation, as here applied, to be a clear viola- tion of the constitutional restriction."

■ While we are of the opinion that the effect of the Act before us in reality strikes down the "obligation" of all contracts within its terms—in fact to take property of the defendant in error—we are equally clear that should it be construed to effect the "remedy" only, it equally impairs the "obligation" of con- tracts under the many authorities we have cited here and in the case of Travelers' Insurance Co. v. Marshall, supra.

■ The Act before us also plainly violates Article 2 of the Con- stitution of Texas, which provides for the separation of the three powers of government.

The origin of this provision is very well known. It first found expression, at least with clarity and precision, in the writings of Montesquieu, with which the members of the Fed- eral Constitutional Convention of 1787 were familiar; early ap- peared in the organic laws of some of the States, and was adopted as a basic principle in the Constitution of the United States in 1787, from which it entered into the Constitutions of nearly all the States, including Texas, both as a Republic and as a State. Montesquieu's "Spirit of Laws," (Collier's Ed.), pp. 151, 152.; 12 Corpus Juris, pp. 802, 803, sec. 234; Sayles' Con- stitutions of Texas, *post*.

Under this division of governmental power it is now an established and fundamental principle of constitutional law

that the Executive can not exercise either Judicial or Legislative authority; the Judicial Department can not be clothed with Executive or Legislative power; and the Legislative "magistracy" can not exercise the functions of either the Executive or the Judicial Departments. 12 Corpus Juris p. 802, sec. 234 et seq. Corpus Juris, supra, declares: "The separation of the powers was believed by Montesquieu, by Blackstone, and by American Constitution makers of the eighteenth century to be one of the chief and most admirable characteristics of the English Constitution."

A principle which is the very foundation of the government of the United States and of the several States must be deemed one essential to the preservation of the rights and liberties of the people, and should be thoughtfully and faithfully observed by all clothed with the powers of government.

So important is this division of governmental power that it was provided for in the First Section of the First Article of the Constitution of the Republic of Texas, and alone it constituted Article 2 of each succeeding Constitution. Sayles' Texas Statutes (Constitutions), Ed. of 1888, pp. 188, 228, 302, 399, 508.

We have not found in the books a plainer violation of this constitutional provision than that shown in the Act before us.

Under the statute (Art. 2218) as it existed prior to its attempted amendment by the measure here involved, Miller had obtained a judgment for a definite amount with foreclosure of a lien on certain lands. Under the law and under the judgment he was entitled to collect the difference between the amount of his judgment and the amount which the property might bring upon sale as under execution against the judgment debtor, which in this case amounted to some $1,450.00. For that amount he had a valid unsatisfied decree which not only determined the amount, but his right to an execution therefor. The decree was not appealed from, and was valid and subsisting when the Act before us was passed. The judgment was or would have been *res adjudicata* in any action brought affecting the question of its amount or Miller's right to the deficiency and his right to seek satisfaction as under execution against any other property of the judgment debtor subject to execution. 29 Texas Jur., p. 928, secs. 102, 103; Blair v. Guaranty S. L. & I. Co., 54 Texas Civ. App., 443, 118 S. W., 608; Freeman v. Klaerner, 190 S. W., 543; Freeman on Judgments (5th ed.), Vol. 2, 1855, sec. 879; 19 Ruling Case Law, 669, sec. 485; Mutual Life Ins. Co. v. O'Donnell, 146 N. Y., 275,

48 Am. St. Rep., 796; Lane v. Equitable Trust Co., 262 Fed., 918, 925 (U. S. C. C. A.). If the Act before us be given effect in this case, so much of the valid, subsisting, and unsatisfied decree as gave Miller judgment for the deficiency and authorized process for its collection is set aside or annulled by legislative fiat.

The status of the judgment being as stated, the Legislature, in view of the constitutional provision we are discussing, was without power to vacate, annul, set aside, reverse, or modify the decree, or to affect the process which the court had lawfully ordered for its execution. 12 C. J., 828, sec. 302; id. 829, secs. 303, 304; 9 Tex. Jur., 450, sec. 36; id. 453, sec. 38; Cooley's Const. Limitations (8th ed.), Vol. 1, 190, 192; Milam County v. Bateman, 54 Texas, 153; Ferguson v. Wilcox, 119 Texas, 280, 28 S. W. (2d) 526; McCullough v. Virginia, 172 U. S., 101; U. S. v. Peters, 5 Cranch (U. S.), 115; State v. Wildes, 34 Nev., 94, 116 Pac., 595; Gilman v. Tucker, 128 N. Y., 190, 26 A. S. R., 464, 13 L. R. A., 304, 28 N. E., 1040; Martin v. South Salem Land Co., 94 Va., 28; Skinner v. Holt, 9 S. D., 427, 62 A. S. R., 878; Denny v. Mattoon, 2 Allen (Mass.), 361, 79 Am. Dec., 784; McNichol v. U. S. M. Rep. Agency, 74 Mo., 457, 471; Sanders v. Cabaniss, 43 Ala., 173; Weaver v. Lapsley, 43 Ala., 224; Griffins v. Cunningham, 20 Gratt. (61 Va.), 31; Teel v. Yancey, 23 Gratt. (64 Va.), 690; Hooker v. Hooker, 10 Sm. & M. (18 Miss.), 599; In re Siblerud, 148 Minn., 347, 182 N. W., 168; Dorsey v. Dorsey, 37 Md., 64, 11 Am. Rep., 528; Bates v. Kimball, 2 Chip. (Vt.), 77; Crane v. Meginnis, 1 Gill & J. (Md.), 463; Edwards v. Pope, 3 Scam. (4 Ill.), 565; Lane v. Dorman, 3 Scam. (4 Ill.), 238; Burt v. Williams, 24 Ark., 91; Oliver v. McClure, 28 Ark., 555; Lewis v. Webb, 3 Greenl. (Me.), 326; Young v. The State Bank, 4 Ind., 301; Taylor v. Place, 4 R. I., 324; Carlton & S. v. Goodwin, Extr., 41 Ala., 153.

Judge Cooley, in his work on Constitutional Limitations, cited above, stated the general rule as follows:

"But the legislative action cannot be made to retroact upon past controversies, and to reverse decisions which the courts, in the exercise of their undoubted authority, have made; for this would not only be the exercise of judicial power, but it would be its exercise in the most objectionable and offensive form, since the legislature would in effect sit as a court of review to which parties might appeal when dissatisfied with the rulings of the court.

"As the legislature cannot set aside the construction of the

law already applied by the courts to actual cases, neither can it compel the courts for the future to adopt a particular construction of a law which the legislature permits to remain in force. 'To declare what the law IS, OR HAS BEEN is a judicial power; to declare what the law SHALL BE, is legislative. One of the fundamental principles of all our governments is, that the legislative power shall be separate from the judicial.'

"If the legislature cannot thus indirectly control the action of the courts, by requiring of them a construction of the law according to its own views, it is very plain it cannot do so directly, by setting aside their judgments, compelling them to grant new trials, ordering the discharge of offenders, or directing what particular steps shall be taken in the progress of a judicial inquiry." Cooley's Constitutional Limitations (8th ed.), Vol. 1, 190, 191, 192.

Corpus Juris, supra, states the rule, the correctness of which, so far as we are informed, is unquestioned. It declares:

"Where the litigation has proceeded to a judgment which determines the controversy on its merits, it is beyond the power of the legislature to alter or control. * * * A state legislature has no power to annul, to set aside, or to reverse a judgment rendered by either a state or a federal court. * * * The legislature cannot modify a judgment nor impair the remedies by which it may be enforced." 12 C. J., p. 828, sec. 302, p. 829, secs. 303, 304.

In the case of Milam County v. Bateman, 54 Texas, 153, we held void an Act of the Legislature attempting the exercise of judicial power. In that case the facts were that Milam County caused to be surveyed two leagues of school land to which it was entitled. Before the field notes were returned to the Land Office, certain preemptors asserted claims to part of the land and caused surveys to be made. The land was patented to Milam County. In litigation between the county and the preemptors, final judgment was rendered in favor of the county. Thereafter the Legislature passed an Act virtually setting aside the judgment and requiring the Commissioner of the Land Office to issue patents to the preemptors.

This Court held the Act void, upon two grounds; one of which was that it was an attempt on the part of the Legislature to exercise judicial power, in violation of the State Constitution. In part we said:

"This act is subject to the further constitutional objection, that it is judicial and not legislative in its character.

"Although the legislature by express provision is given the right to judge of the qualifications and election of its own members, and perform other judicial acts for its proper government, as to punish disorderly conduct, yet, under our system of government, unlike the parliament of Great Britian, it has no general judicial powers.

"As said by Mr. Cooley, 'the legislative action cannot be made to retroact upon past controversies, and to reverse decisions which the courts, in the exercise of their undoubted authority, have made; for this would not only be the exercise of judicial power, but it would be its exercise in the most objectionable and offensive form, since the legislature would in effect sit as a court of review, to which parties might appeal when dissatisfied with the rulings of the courts.' Cooley's Const. Lim., 94; Wade on Retroactive Laws, Sec. 31; Denny v. Mattoon, 2 Allen, 361." Milam County v. Bateman, supra.

The Supreme Court of Nevada, in the case of State v. Wildes, 34 Nev., 94, 116 P., 595, reviewed the decisions upon the power of the legislature to annul or impair a judgment of a court, and among other things said:

"It is well settled that an attempt upon the part of the Legislature to vacate or modify the conditions of an existing judgment is beyond its constitutional powers, and that an enactment attempting such an exercise of power is unconstitutional and void. Ex parte Darling, 16 Nev., 98, 40 Am. Rep., 495; Martin v. South Salem Land Co., 94 Va., 28, 26 S. E., 591; Skinner v. Holt, 9 S. D., 427, 69 N. W., 595, 62 Am. St. Rep., 878; Butler v. Supervisors, 26 Mich., 22; Gaines v. Executors, 9 B. Mon. (Ky.), 295, 48 Am. Dec., 425; Roche v. Waters, 72 Md., 264, 19 Atl., 535, 7 L. R. A., 533; Lincoln v. Alexander, 52 Cal., 482, 28 Am. Rep., 639; Merrill v. Sherburne, 1 N. H., 199, 8 Am. Dec., 52; In re Chetwood, 165 U. S., 443, 460, 17 Sup. Ct., 385, 41 L. Ed., 782. In Martin v. South Salem Land Co., supra, the court said: 'The Legislature, within certain limitations, may alter or control remedies by which litigants ascertain their rights in the courts; but, when the litigation has proceeded to judgment and decreed upon the merits of the controversy, it has passed beyond its power.'

\*   \*   \*   \*   \*

"The right to have the property of the corporation administered in accordance with the provisions of the judgment and the statute upon which it was based is a right of property which the Legislature is without power to disturb. Gilman v. Tucker, 128 N. Y., 190, 28 N. E., 1040, 13 L. R. A., 304, 26

Am. St. Rep., 464; Bates v. Kimball, 2 D. Chip. (Vt.), 77; Strafford v. Sharon, 61 Vt., 126, 17 Atl., 793, 18 Atl., 308, 4 L. R. A., 499; Searcy v. Turnpike Co., 79 Ind., 274; Taylor v. Place, 4 R. I., 324; People v. Supervisors, 26 Mich., 22; U. S. v. Peters, Judge, 5 Cranch, 115, 3 L. Ed., 53; McCullough v. Virginia, 172 U. S., 102, 19 Sup. Ct., 134, 43 L. Ed., 382; Memphis v. U. S., 97 U. S. 293, 24 L. Ed., 920.

"In McCullough v. Virginia, supra, the court, by Brewer, J., said: 'But there are more substantial reasons than this for not entering this motion. At the time the judgment was entered in the circuit court of the city of Norfolk, the act of 1882 was in force, and the judgment was rightfully entered under the authority of that act. The writ of error to the Court of Appeals of the State brought the validity of the judgment into review, and the question presented to that court was whether at the time it was entered it was lawful or not. If lawful, the plaintiff therein had a vested right which no other legislation could disturb. It is not within the power of the Legislature to take away rights which have been once vested by a judgment. Legislation may act on all subsequent proceedings, may abate actions pending, but, when those actions have passed into judgment, the power of the legislature to disturb the rights created thereby ceases.' "

In the case of Gilman v. Tucker, 128 N. Y., 190, 26 Am. St., Rep., 464, in an able opinion, the court discussed the power of the Legislature to affect rights obtained under a judgment; and, after an exhaustive review of the decisions and authorities, held as follows:

"We must bear in mind that a judgment has here been rendered, and the rights flowing from it have passed beyond the legislative power, either directly or indirectly, to reach or destroy. After adjudication, the fruits of the judgment become the rights of property. These rights became vested by the action of the court and were thereby placed beyond the reach of legislative power to affect."

Chief Justice Bigelow, in Denny v. Mattoon, 2 Allen (Mass.), 361, 379, 79 Am. Dec., 784, cited by this Court with approval in Milam Co. v. Bateman, supra, stated the rule clearly in the following language:

"A fortiori, an act of the legislature cannot set aside or annul final judgments or decrees. This is the highest exercise of judicial authority. Lord Coke calls judgment and execution the 'fruit of the law.' To vest in the legislature the power to take them away, or to impair their effect on the rights of

parties, would be to deprive the judiciary of its most essential prerogative. It could then no longer finally adjudicate and determine the rights of litigants. The will of the legislature would be substituted in the place of fixed rules and established principles, by which alone judicial tribunals can be governed."

In the case of the United States v. Peters, 5 Cranch (U. S.), 115, 3 Law Ed., 53, Chief Justice Marshall, in holding that a State Legislature had no power to annul or reverse the judgment rendered by a federal court, used the following striking language:

"If the legislatures of the several states may, at will, annul the judgments of the courts of the United States, and destroy the rights acquired under those judgments, the constitution itself becomes a solemn mockery, and the nation is deprived of the means of enforcing its laws by the instrumentality of its own tribunal. So fatal a result must be deprecated by all; and the people of Pennsylvania, not less than the citizens of every other state, must feel a deep interest in resisting principles so destructive of the Union, and in averting consequences so fatal to themselves."

Since we are convinced that the Act before us violates Section 16, Article 1, of the Constitution, which prohibits legislation impairing the obligation of contracts, and Article 2, which prohibits the exercise of judicial power by the Legislature, it is our duty to refuse the application for writ of error.

We have the authority to, and generally do, refuse applications without writing opinions, but have written in this case out of deference to the importance of the questions.

Since we have decided that the Act violates the Constitution of Texas, and is void for that reason, it is unnecessary for us to consider or pass upon the question as to whether or not it violates the Constitution of the United States; and we have not done so.

This application was considered by the Supreme Court and both Sections of the Commission, and I am requested to state that all concur in this opinion.

The application for writ of error is refused.